No. 57,095

STATE OF KANSAS, *Appellee,* v. JAMES H. WOOLDRIDGE, JR., *Appellant.*

(703 P.2d 1375)

Opinion filed July 26, 1985.

*David K. Clark,* of Fredonia, argued the cause and was on the brief for appellant.

*John J. Gillett,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: James H. Wooldridge, Jr. appeals from his convictions by a jury of aggravated burglary (K.S.A. 21-3716), aggravated robbery (K.S.A. 21-3427), attempted rape (K.S.A. 21-3301 and 21-3502), aggravated battery (K.S.A. 21-3414), aggravated assault (K.S.A. 21-3410) and destruction of property (K.S.A. 21-3720). This appeal questions the trial court's refusal to order a psychiatric examination of the complaining witness and the admission in evidence of a videotaped deposition of the victim.

The victim, Mrs. G., was an eighty-seven-year-old widow living alone in Neodesha, Kansas. She testified in her deposition as follows: In the late night hours of June 2, 1983, she was watching television in her living room when an intruder entered her home through an unlocked bathroom window. The man came up behind her chair, clapped his hand over her mouth, pulled her out of the chair and dragged her to the bedroom. He threw her on the bed and removed the bottom of her pajamas, attempting to force her to have intercourse. Mrs. G., however, managed to free herself from his grasp. The intruder forced her onto a second bed and again tried to sexually assault her, but without success.

The intruder demanded money and Mrs. G. offered him all she had if he would leave her alone. She told him the money was in the dining room, in a box on a chair, and that he would find it

there. The man insisted, however, that she get it. He forced her from the bedroom into the dining room where she pointed to the box. The man removed the money, $60.00, from the box, counted it and then shoved it into his jacket. He took Mrs. G. back into the bedroom, but left when she told him her husband would return home any moment. Twice during the intruder's presence in the house he threatened to kill her. Mrs. G. suffered bruises on her arm, and cuts and abrasions on her leg. During the ensuing police investigation, fingerprints lifted from the glass in the bathroom window and a palm print taken from the edge of the bathtub were later matched with prints obtained from defendant.

Prior to trial defense counsel filed a motion requesting that the court order a psychiatric evaluation of Mrs. G. This motion was based on an affidavit from her physician, which in its entirety read:

"Mrs. [G.] has been treated by me since 1978, her prior treatment had been by R. R. Brummett, M.D., and prior to that time was by F. A. Moorhead, M.D., deceased. I do not have any records stating her definite psychiatric diagnosis, but in reviewing the previous records that I have, she has been hospitalized several times in the past for apparent long periods of time and has undergone shock therapy because of her mental disorder. Since I have known her she has had a marked phobia about leaving her home. She has refused office appointments since her husband died a couple of years ago. She is on numerous tranquilizer-type medications which she has been on for many years. I did hospitalize her one day along with her husband for a general evaluation in 1979, but because of the marked anxiety that she had in the hospital she was discharged home without a complete evaluation. Since then she was seen in the office until September 1980, she would be brought to the office by her husband against her better judgment. Since her husband died, as far as I know, she has not been out of her home.

"She was seen on a house call on the 24th of June, following her assault. Physical exam at that time continued to reveal marked anxiety with my presence in her own home. Physical diagnosis' are Parkinson's disease, hyperthyroidism and recurrent pedal edema probably secondary to chronic congestive heart failure and arteriosclerotic heart disease.                          .

"Because of Mrs. [G's] mental condition, age and physical condition, I feel that her leaving her home for any reason would cause marked mental stress and probably aggravate her physical condition to some degree."

This same affidavit had been relied on by the State in seeking, and receiving, the court's permission to videotape the victim's deposition at her home rather than requiring her to appear in court. However, the court denied defendant's motion for a psychiatric examination, noting her hospitalization and shock treatments occurred prior to 1978.

Defendant asserts it was error to deny his motion for a psychiatric examination of the victim. Both defendant and the State point to our decision in *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979), as supporting their respective positions on this issue. *Gregg* was the first case in which we were presented with a request that the district court order a psychiatric examination of the complaining witness in a sex crime case. We held that such examinations are not mandated in all cases but that a trial judge may grant the request in his discretion "if the defendant presents a compelling reason for such examination." 226 Kan. at 489. Defendant Gregg was charged with aggravated sodomy, aggravated indecent solicitation of a child, and indecent liberties with a child, an eight-year-old girl. Focusing on his request for a psychiatric examination of the victim, we said:

"The motion for the examination, made the day before trial, rested on such factors as the child's age, the seriousness of the crime, and the lack of corroborating evidence (in fact, her testimony was not wholly uncorroborated). No facts were stated or evidence introduced as to the child's mental instability, lack of veracity, similar charges against other men proven to be false, or any other reason why this particular child should be required to submit to such an examination. . . .

"In short, no compelling reason for ordering a psychiatric examination of the child was shown or even alluded to. No abuse of discretion by the trial court is shown in denying defendant's motion for psychiatric examination of the complaining witness." *Gregg*, 226 Kan. at 490.

Defendant asserts the rulings of the trial court were inconsistent in allowing the use of a videotape deposition in lieu of the victim's personal appearance in court and, based upon the identical evidence, in denying the motion for a psychiatric examination. While the doctor did state she had a phobia about leaving her home, he also testified she was competent, coherent, understood what was happening in her surroundings and was capable of understanding questions asked of her. A careful review of the videotape deposition and the transcript of it fully substantiates the doctor's testimony. Defendant was present at the deposition and his counsel had a full opportunity to cross-examine Mrs. G. In fact, the cross-examination covered more than two-thirds of the entire deposition. Defendant has shown no compelling reason why the victim should have been subjected to a psychiatric examination and we find no abuse of discretion in the court's rulings.

The remaining issues pertain to the admission of the videotaped deposition in evidence at the trial. In taking the deposition of Mrs. G., the state went to the additional precaution of having a court reporter present who took the testimony and later transcribed it in the customary fashion. This court has had the benefit of both the written deposition, as taken by reporter, and the videotape. The use of videotaped depositions in the courts is of relatively recent origin. Absent procedural irregularities resulting in a violation of a defendant's constitutional rights, courts have uniformly upheld the admission of videotaped depositions into evidence at criminal trials. *Hendricks v. Swenson*, 456 F.2d 503 (8th Cir. 1972); *State v. Reid,* 114 Ariz. 16, 559 P.2d 136 (1976); *People v. Moran,* 39 Cal. App. 3d 398, 114 Cal. Rptr. 413 (1974); *Hutchins v. State,* 286 So. 2d 244 (Fla. Dist. App. 1973); *People v. Garland,* 44 Mich. App. 243, 205 N.W.2d 195 (1973); *State v. Malzac,* 309 Minn. 300, 244 N.W.2d 258 (1976); *State v. Jeffries,* 55 N.C.App. 269, 285 S.E.2d 307 (1982); *State v. Hewett,* 86 Wash. 2d 487, 545 P.2d 1201 (1976). See also Annot., 60 A.L.R. 3d 333.

In attacking the use of the videotaped deposition, defendant's first argument is that use of the deposition violated his constitutional rights under Section 10 of the Bill of Rights to the Kansas Constitution. That section reads:

"§ 10. **Trial; defense of accused.** In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; to demand the nature and cause of the accusation against him; to meet the witness face to face, and to have compulsory process to compel the attendance of the witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. No person shall be a witness against himself, or be twice put in jeopardy for the same offense."

It is defendant's position that as the right to confront witnesses "face to face" and the right to a "public trial" are contained in the same clause of the same sentence, both requirements must be met simultaneously in open court as a part of the broad right to a fair trial. While we agree that it is preferable to present the witnesses in a criminal trial in person before the jury, the failure to do so under appropriate circumstances in compliance with K.S.A. 60-460(c) does not constitute a constitutional violation. Here, defendant was not denied his opportunity to confront the witnesses against him and was afforded full rights of cross-examination which were liberally utilized. Defendant, in his brief,

concedes that the use of depositions is proper in certain circumstances but goes on to assert there was no good faith showing by the State that Mrs. G. was unavailable to testify in open court. What has been said relative to the first issue discussed earlier adequately disposes of that argument. No violation of Section 10 of the Kansas Bill of Rights has been shown in the admission of the deposition which was taken pursuant to K.S.A. 1984 Supp. 22-3211.

Finally, defendant argues that the procedure used in taking the deposition violated his constitutional right to due process of law. The point lacks merit for several reasons. The issue was never raised at the trial court level and as we have said many times, "issues not raised before the trial court will not be considered for the first time on appeal." *State v. Handley,* 234 Kan. 454, Syl. ¶ 5, 673 P.2d 1155 (1983). In addition, the defendant waived all objections to the evidentiary foundation for admission of the deposition and, finally, the alleged deficiencies in the manner in which the deposition was taken are totally without merit.

We have carefully considered all issues and arguments of the defendant and find no error.

The judgment is affirmed.