UNITED STATES, Appellee,

v.

Donald A. CROCKETT, Airman First
Class, U.S. Air Force, Appellant.

No. 50628.
ACM 24293.

U.S. Court of Military Appeals.

March 24, 1986.

For Appellant: *John H. Broujos*, Es-
quire (argued); *Colonel Leo L. Sergi* and
*Major William H. Lamb.*

For Appellee: *Lieutenant Colonel Don-
al F. Hartman*, Jr. (argued); *Colonel Ken-
neth R. Rengert* (on brief); *Lieutenant
Colonel Alfred E. T. Rusch*, USAFR.

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried by general court-
martial composed of a military judge alone
at Rhein-Main Air Base, Federal Republic
of Germany, in 1983. Contrary to his
pleas, he was convicted of sodomy and in-
decent assault on a minor female, in viola-
tion of Articles 125 and 134, Uniform Code
of Military Justice, 10 U.S.C. §§ 925 and
934, respectively. He was sentenced to a
dishonorable discharge, confinement for 6
years, total forfeitures, and reduction to

the lowest enlisted grade. The convening authority approved this sentence, and the Court of Military Review affirmed in a summary opinion.

This Court granted review on two issues raised by appellate defense counsel. We will treat them in the following order:

## I

WHETHER THE USE OF A VIDEO-TAPED DEPOSITION WAS AUTHO-RIZED UNDER UNIFORM CODE OF MILITARY JUSTICE ARTICLE 49, 10 U.S.C. SEC. 849.

## II

WHETHER THE DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESS AT TRIAL BY THE USE OF A VIDEO-TAPED DEPOSITION.

We find no prejudicial error in the admission of the videotape depositions in this case.

The circumstances surrounding these issues are substantially uncontroverted. The sexual offenses purportedly occurred in the bedroom of appellant's quarters in Germany on July 12, 1983. The victim, Dina, was a 12-year-old girl who resided in Florida but was on summer vacation in Germany. She was living with relatives in military housing at the time of the alleged offenses.

Dina maintained that appellant had committed the offenses; but appellant, testifying in his own behalf, denied their occurrence. Although Dina and Crockett were the only persons present in the bedroom when the offenses allegedly were committed, several teenagers were outside this room at an impromptu party. Some of them provided testimony which indirectly corroborated Dina's account. Appellant relied on character witnesses to bolster his defense.

Dina did not appear before the court-martial to give her testimony against appellant. Along with her sister, she had returned to Florida prior to Crockett's trial.

After trial counsel had informed the judge that the two girls refused to return to Germany for this trial, he requested that their depositions be taken in Florida in the presence of appellant and his counsel and be videotaped for presentation to the fact-finder. Defense counsel objected, insisting that the two witnesses be brought to Germany or that the situs of the trial be transferred in whole or in part to Florida, where they could be subpoenaed to appear at trial. The military judge granted the prosecutor's request.

Pursuant to this ruling, Dina and her sister were served with subpoenas and directed to appear at an air base in Florida to give their depositions. Crockett and his defense counsel traveled to Florida at government expense for these depositions and cross-examined both witnesses. At trial, the Government introduced evidence that the deposed witnesses had refused invitational travel orders to return to Germany. Accordingly, the videotaped depositions were admitted in evidence and were played for the trial judge without further objection from the defense.

## I

■ Article 49(a) of the Uniform Code of Military Justice, 10 U.S.C. § 849(a), authorizes the taking of "oral or written depositions" and provides in Article 49(d) that, "upon reasonable notice to the other parties," they "may be read in evidence before any military court or commission in any case not capital." Initially, this Article was construed to authorize the use of depositions by either party even though they had been taken on written interrogatories without the presence of the accused. *See United States v. Parrish*, 7 U.S.C.M.A. 337, 22 C.M.R. 127 (1956); *United States v. Sutton*, 3 U.S.C.M.A. 220, 223, 11 C.M.R. 220, 223 (1953). Subsequently, in *United States v. Jacoby*, 11 U.S.C.M.A. 428, 29 C.M.R. 244 (1960), the earlier precedents were overruled on the ground that, in light of the sixth amendment, "[t]he correct and constitutional construction of ... [Article 49] requires that the accused be afforded

the opportunity (although he may choose knowingly to waive it thereafter) to be present with his counsel at the taking of written depositions." *Id.* at 433, 29 C.M.R. at 249. However, *Jacoby* did not have the effect of eliminating Article 49 from the Code. Instead, it only prohibited use of a deposition against an accused unless he and his counsel were present for its taking.

The Manual for Courts-Martial which was in effect at the time of Crockett's trial defines a "deposition" as "the testimony of a witness in response to questions submitted by the party desiring the deposition and by the opposite party, *which is reduced to writing* and taken under oath before a person empowered to administer oaths." Para. 117*a*, Manual for Courts-Martial, United States, 1969 (Revised edition) (emphasis added). Obviously, this language—and the provision in Article 49(d) that a deposition "may be read" in evidence—contemplate the traditional deposition, which is transcribed by a reporter using shorthand, stenotype, stenomask, or some similar means.

We perceive nothing in the Code or the Manual which even arguably concerns how the deposition is recorded in the first instance, so long as it is transcribed in written form to "be read" in evidence at the trial. Thus, just as court-martial proceedings are often recorded on audiotape—sometimes with a multitrack microphone system and sometimes with stenomask—and then transcribed to constitute a written record of trial, a deposition may be recorded on audiotape and later transcribed to be offered in written form at trial.

We see no difference if the original recording is done with videotape, rather than audiotape, and then a written transcription is made of the videotaped questions and answers. On the other hand, "playing" an untranscribed deposition which has been recorded by means of audiotape or videotape does not come within the letter of the Code and Manual provisions, unless the questions posed and answers given at the time of the recording have been transcribed

in written form and thereafter read into evidence at the time of trial.

In 1983, Congress amended Article 49(d) expressly to permit the recording of depositions on "audiotape, videotape or similar material," and the "playing" of these tapes to the factfinder at trial. Pub.L. No. 98–209, § 6(b), 98 Stat. 1400, effective August 1, 1984. Appellant contends that the decision of Congress to amend Article 49 in this way supports a restrictive interpretation of the original statutory language. Accordingly, because Crockett's trial occurred in November 1983—before this amendment took effect—the "playing" at trial of the videotape depositions of Dina and her sister was impermissible; and the receipt of their testimony in this manner prejudiced appellant.

We are unconvinced that the recent amendment to Article 49 of the Code establishes that previously a videotape deposition could not "be played in evidence" at a court-martial. *See People v. Winborne*, 90 Misc.2d 71, 394 N.Y.S.2d 769 (S.Ct.1977). The legislative history of the amendment is scant, *see* S.Rep. No. 98–53, 98th Cong., 1st Sess. 26 (1983); and appellant's argument is no more plausible than the Government's contention that Congress only intended to eliminate any ambiguity in the original phraseology of Article 49 and to affirm specifically its approval of a practice that already existed and was implicitly permissible. *See* McGovern, *The Military Oral Deposition and Modern Communications*, 45 Mil.L.Rev. 43, 68–71 (1969); *see also United States v. Kelsey*, 14 M.J. 545 (A.C.M.R.1982); *United States v. Dempsey*, 2 M.J. 242 (A.F.C.M.R.), *pet. denied*, 2 M.J. 149 (1976).

Article 36 of the Code, 10 U.S.C. § 836, delegates to the President broad power to prescribe procedure and rules of evidence for trials by court-martial; and, in the exercise of this power, he has promulgated Mil.R.Evid. 101(b), Manual, *supra*. This Rule directs courts-martial to follow the rules of evidence in effect in criminal trials in the Federal district courts, except to the extent that they are precluded from doing

so by other rules prescribed by the President or by the Uniform Code.

The use of videotaped depositions has become commonplace in civil and criminal trials in both Federal and State courts. *See United States v. Tunnell,* 667 F.2d 1182, 1186–87 (5th Cir.1982); *United States v. Benfield,* 593 F.2d 815, 817 n. 4 (8th Cir.1979); *United States v. King,* 552 F.2d 833 (9th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). *See also United States v. Sines,* 761 F.2d 1434, 1440–41 (9th Cir.1985); *Barker v. Morris,* 761 F.2d 1396, 1399 (9th Cir.1985); *United States v. Terrazas-Montano,* 747 F.2d 467, 469 (8th Cir.1984); *State v. Washington,* 202 N.J.Super. 187, 494 A.2d 335, 338 (App.1985); *State v. Wooldridge,* 237 Kan. 737, 703 P.2d 1375, 1377 (1985); *People v. Winborne, supra*; 60 ALR 3d 333 (1974). Thus, we conclude that the playing of videotaped depositions is permitted by the rules of evidence in effect in Federal district courts. Moreover, we perceive no express prohibition of their use in the Military Rules of Evidence, the Manual for Courts-Martial, or the Code. Therefore, pursuant to Mil.R.Evid. 101(b), the videotape depositions of the testimony of the victim and her sister were properly "played" in evidence at trial.[1]

In reaching this conclusion, we are not in any way defying the intent of Congress or the President. The language of Article 49 of the Code reflects the court-reporting technology that was available at the time. We have not been offered any reason why either Congress or the President would seek by such language to prohibit the use of new technology to accomplish the same results more effectively and more rapidly.

The playing of a videotape deposition would appear to give an accused more safeguards than would be available from the reading of its written counterpart. However, if Crockett believed that he would have been better protected by transcription of the videotape recording so that literally it could be "read" into evidence, then he

should have made a specific objection on this ground at trial. *See* Mil.R.Evid. 103(a)(1). Moreover, here we can see no possibility of prejudice from "playing" the videotape deposition into evidence, instead of transcribing its contents in written form and then "reading" the deposition at trial.

## II

### A

Mil.R.Evid. 804(b)(1) provides that, "if the declarant is unavailable as a witness," there may be admitted in evidence his

> [t]estimony given as a witness at another hearing of the same or different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

*Accord* Fed.R.Evid. 804(b)(1). The videotape depositions offered against appellant were taken in the same proceeding. Crockett and his defense counsel were present and had the opportunity to object to testimony offered on direct examination and to cross-examine the two witnesses about their testimony.

Unlike a preliminary hearing, when a defense counsel may lack any motive to cross-examine prosecution witnesses extensively or even to cross-examine at all, *see California v. Green,* 399 U.S. 149, 195–98, 90 S.Ct. 1930, 1954–56, 26 L.Ed.2d 489, 518–19 (1970) (Brennan, J., dissenting), this deposition was taken in preparation for a pending trial. Thus, defense counsel knew the relevant issues and possessed the same motive for cross-examining Dina and her sister that he would have had if they had testified in person at trial.

■ What remains, then, is to consider whether these witnesses were "unavailable." For purposes of Mil.R.Evid. 804(b), "[u]navailability as a witness" in-

---

1. Of course, these videotaped depositions subsequently were transcribed so that their contents are part of the written record of trial reviewed on appeal in this case.

cludes absence when "the proponent of the declarant's statement has been unable to procure the declarant's attendance ... by process or other reasonable means." Mil. R.Evid. 804(a)(5); *accord* Fed.R.Evid. 804(a)(5). In this case, the court-martial was convened in Germany and the witnesses were in Florida. Therefore, they could not be compelled to appear at trial in Germany against their will. *United States v. Bennett*, 12 M.J. 463 (C.M.A.1982); *cf. Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972).

■ Of course, nonamenability to a subpoena does not necessarily establish unavailability as a witness. *Cf. Mancusi v. Stubbs, supra; Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Often witnesses who cannot be compelled to appear can nonetheless be persuaded to do so. In this case, however, the prosecutor had unsuccessfully offered the two girls invitational travel orders from Florida to Germany, which would have authorized payment of their travel expenses by the Government. *Cf. Barber v. Page, supra* at 723–24, 88 S.Ct. at 1321–22. While, as appellate defense counsel point out, this offer would only have authorized flight overseas in tourist-class accommodations, rather than in first class, there is no showing that more luxurious travel arrangements would have induced the witnesses to change their minds and travel voluntarily to Germany.

■ Even so, appellant insists that the witnesses were available because the court-martial could have conducted part of its proceedings in Florida in order to hear them testify in person. Although courts-martial have greater mobility than do most civil courts, we are unpersuaded that a witness is "available" under Mil.R.Evid. 804(a) because of a possibility that the court-martial could move to the witness' residence in order to hear his testimony first hand.

When admissibility of the proposed videotape deposition was considered by the judge, Crockett had not yet elected to be tried by military judge alone. Thus, as of that time, moving the court-martial to Florida would have required the expense, effort, inconvenience, and delay of transporting from Europe to the United States the court members, judge, counsel and supporting court personnel. Moreover, unless these same persons were transported back to Europe for the remainder of the trial, it also would have been necessary to take the other witnesses—eight civilian and three military—from Germany to Florida.[2] The Government would have been obligated to feed and house everyone while they were enroute and in Florida. Because any military personnel transported to Florida would have been away from their regular duties for several additional days and would not have been available in Germany for any emergencies, even the mission of their military units might have been adversely affected. In view of these circumstances, we are convinced that the Government used every "reasonable means" to produce the two witnesses at trial. *See* Mil.R.Evid. 804(a)(5); Fed.R.Evid. 804(a)(5).

Later in the trial, appellant opted to be tried by the military judge. Obviously, this choice would have made it easier and less disruptive to have changed the venue of the trial from Germany to Florida because the transportation of members would then have been unnecessary. However, appellant did not renew his objection in light of the changed conditions resulting from his election of judge-alone trial, so we should only consider the correctness of the trial judge's ruling in light of the circumstances known to him when he ruled. Furthermore, even for a judge-alone trial, the two witnesses were "unavailable" because the cost, expense, delay, and disruption resulting from a change of the trial location still would have been unreasonably great. Bringing a court-martial to a witness is

---

**2.** If the civilian witnesses did not wish to make this trip to Florida, additional problems would arise.

more difficult than bringing a witness before a court-martial.

### B

■ Our discussion has been in terms of the former testimony exception to the hearsay prohibition, *see* Mil.R.Evid. 804(b)(1); Fed.R.Evid. 804(b)(1). This prohibition stems from the same roots as the confrontation clause in the sixth amendment, *see Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970) (plurality opinion); and hearsay rules and the right of confrontation "are generally designed to protect similar values." *California v. Green*, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970). However, the hearsay rule applies in civil, as well as criminal, trials and can be invoked by any of the parties, while the sixth amendment right of confrontation—which is recognized in civilian and military courts, *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *United States v. Jacoby, supra* —is enjoyed only by defendants in criminal trials. *Cf.* 4 J. Weinstein and M. Berger, *Weinstein's Evidence* § 804(a) [01], at 804–34 (1979); 5 Wigmore, *Evidence* §§ 1401(b) and 1407(8) (Chadbourn rev. 1974).

In construing the sixth amendment, the Supreme Court has stated:[3]

> The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

Thus, normally a deposition—even if taken in the presence of the accused and his counsel—cannot be used against the accused in a criminal trial because the factfinder is not able to look at the witness "and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

However, a videotape deposition provides a factfinder a better basis for perceiving a witness' demeanor and evaluating his credibility than is provided by a written deposition or by a deposition recorded by means of audiotape and played back in court. However, we are unaware of any case which has yet decided that a videotape deposition is the "functional equivalent" of live in-court testimony for purposes of satisfying the confrontation requirement.

Just as the hearsay rule recognizes an exception with respect to certain former testimony given by a witness who is unavailable, the right of confrontation is subject to a former-testimony exception. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs, supra* ; *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). This exception—like the corresponding hearsay exception—is based on considerations of trustworthiness and necessity.

As was stated in *Mattox* with respect to the requirement that the factfinder must be allowed to observe the witness' demeanor upon the stand, "general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case." 156 U.S. at 243, 15 S.Ct. at 340. "The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination. This, the law says, he shall under no circumstances be deprived of." *Id.* at 244, 15 S.Ct. at 340.

---

3. *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895); *United States v. Jacoby*, 11 U.S.C.M.A. 428, 431, 29 C.M.R. 244, 247 (1960).

Crockett and his counsel were transported to Florida for the videotape depositions; and so they saw the two witnesses face to face and subjected them "to the ordeal of a cross-examination." The depositions were taken in a courtroom in Florida in order to emphasize the solemnity and seriousness of the occasion. Furthermore, the playing of the videotape provided the factfinder an opportunity to observe the demeanor of the absent witnesses.

Under these circumstances, the factfinder here was better equipped to determine the trustworthiness of the absent witness than were the factfinders in *Ohio v. Roberts, Mancusi v. Stubbs,* and *Mattox v. United States, all supra*—where the former testimony was read into evidence from an written transcript. Moreover, here the "indicia of reliability" of the testimony presented by the videotape depositions were at least as satisfactory as in any of the cases where the admission of former testimony has been held to comply with the Confrontation Clause. *See Ohio v. Roberts, supra,* 448 U.S. at 65, 100 S.Ct. at 2539; *Mancusi v. Stubbs, supra,* 408 U.S. at 213, 92 S.Ct. at 2313; *see also Dutton v. Evans, supra,* 400 U.S. at 89, 91 S.Ct. at 220.

Nonetheless, the Government must demonstrate the necessity for using the videotape deposition—or, to put it differently, must establish the "unavailability" of the absent witnesses to the extent required by the sixth amendment. We have already discussed "unavailability" for purposes of the former-testimony exception to the hearsay rule. However, to conclude that the requirements of Mil.R.Evid. 804(a) have been met does not necessarily mean that the confrontation clause has been satisfied.

Mil.R.Evid. 804(a) is derived from Fed.R. Evid. 804(a) and substantially conforms thereto. Drafters' Analysis, App. 18, Man-

ual, *supra*. The Federal Rule applies to civil as well as criminal trials; and the drafters of that Rule may have been willing to allow a lower threshold of proof to establish "unavailability" for purposes of the hearsay exceptions than the draftsmen of the sixth amendment would tolerate in determining when statements of an absent declarant may be received in evidence against an accused.[4] Mil.R.Evid. 804(a)(5) refers to a declarant whose attendance or testimony cannot be procured "by process or other *reasonable* means." (Emphasis added.) However, it is conceivable that for purposes of the confrontation clause a witness is "unavailable" only if his attendance or testimony cannot be procured by *any* means. *Ohio v. Roberts, supra,* 448 U.S. at 74, 100 S.Ct. at 2543; *State v. Goddard,* 38 Wash.App. 509, 685 P.2d 674, 676 (1984).

The decisions allowing admission of former testimony against the defendant in a criminal trial would be consistent with this strict standard. For example, in *Mattox v. United States, supra,* the absent witness had died; in *Mancusi v. Stubbs, supra,* the absent witness was in Sweden and apparently was not subject to the process of any American court; and in *Ohio v. Roberts, supra,* the absent witness could not be located—although the dissenters contended that the search had not been diligent enough.

If absolute unavailability of the absent witness is necessary, then the use of the videotape deposition against Crockett might be questioned. Although Dina and her sister could not be compelled to come to Germany, the venue of the trial could have been changed to Florida, in which event the two girls could have been compelled to appear and testify.

The Supreme Court has affirmed that "a witness is not 'unavailable' for purposes of ... the exception to the confrontation re-

---

**4.** 4 J. Weinstein and M. Berger, *Weinstein's Evidence* § 804(a)[01], at 804–34 (1979); *see* Comments, *Evidence-Hearsay Exception-Requirements for Unavailability of Witness in Criminal Case Under The Federal Law of Evidence,* 29 Rutgers L.Rev. 133, 135–36 (1975). It is not unusual to provide special safeguards to the defendant in a criminal trial. For example, the requirement of proof beyond a reasonable doubt applicable in criminal trials is much more onerous than the preponderance-of-the-evidence burden which usually applies in civil trials.

quirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial." *Barber v. Page*, 390 U.S. at 724–25, 88 S.Ct. at 1321–22 (emphasis added). With respect to "good faith," the Court has more recently explained in *Ohio v. Roberts, supra*, 448 U.S. at 74–75, 100 S.Ct. at 2543–44:

> The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), "good faith" demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. "The lengths to which the prosecution must go to produce a witness ... is a question of reasonableness." *California v. Green*, 399 US, at 189, n 22, 90 S Ct 1930, 26 L Ed 2d 489 (concurring opinion, citing *Barber v. Page, supra* ). The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate.

Certainly "good faith" requires more than the inaction displayed by the prosecution in *Barber v. Page, supra.* However, here—instead of inaction—the Government offered to pay the cost for the two witnesses to travel to Germany. Whether "good faith" extends to changing the situs of a trial from Germany to Florida in order to procure the live testimony of a government witness is a question for which there is no precedent. Indeed, the issue could not even arise in American civilian courts because they do not try criminal cases in foreign countries.

We conclude that in this situation the possibility of changing the location of the trial does not automatically establish that the absent witness is "available" within the meaning of the cases concerned with confrontation. Instead, some attention must be paid to "considerations of public policy and the necessities of the case." *See Mattox v. United States, supra,* 165 U.S. at 243, 15 S.Ct. at 340. Here the chief of these "considerations" is that to conduct all or part of the trial in Florida would lead to problems of delay, impose a hardship on the trial participants, and possibly disrupt military activities.

It also seems relevant to prosecutorial "good faith" that the testimony of the absent witnesses was presented by videotape deposition. Next to the presence of the witnesses at trial, playing the videotape provided the factfinder the most reliable means for evaluating that testimony accurately. Although the presence of "indicia of reliability" as to the former testimony of an absent prosecution witness does not allow the Government to dispense with efforts to procure his presence at trial, those "indicia" may properly be taken into account in considering how far the Government must go in those efforts. Moreover, the cost and inconvenience to the Government in taking the videotape deposition is another hallmark of its good faith. In view of all the circumstances, we are convinced that the Government carried its burden to demonstrate unavailability of the two witnesses.

Accordingly, the videotaped depositions of the two witnesses were admissible against appellant in his trial.

### III

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COX concurs.