UNITED STATES, Appellee,

v.

Private First Class Everett E. BOS-
WELL, 447–76–7850, United
States Army, Appellant.

ACMR 9100292.

U.S. Army Court of Military Review.

29 Jan. 1993.

For Appellant: Captain James M. Heaton, JAGC, Captain Mark L. Toole, JAGC (on brief). Captain Robert H. Pope, JAGC, Captain Michael Huber, JAGC.

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Edith M. Rob, JAGC (on brief). Lieutenant Colonel Daniel J. Dell'Orto, JAGC.

Before WERNER, JOHNSON, and GRAVELLE Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial consisting of officer members of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for eighteen years, forfeiture of all pay and allowances, and reduction to Private E1.

Appellate defense counsel assert two errors: that the appellant was denied his Sixth Amendment right to witnesses who had deployed to Saudi Arabia; and, that the military judge erred in *sua sponte* excusing a court member over defense objection after assembly of the court. We dis-

agree that errors occurred, and affirm the appellant's conviction and sentence.

## I. Factual Setting

After being alerted for deployment to Saudi Arabia for Operation Desert Shield/Storm, the appellant and two companions at Fort Hood, Specialist (SPC) Gaunt and Private First Class (PFC) Topping, went drinking in Killeen, Texas. Eventually, the three soldiers picked up a prostitute and took her to a motel room. After some sexual activity at the motel, they drove with the woman in a borrowed vehicle to the vicinity of Stillhouse Lake. The appellant and the woman left the vehicle, presumably for more sexual activity. Shortly after, PFC Topping glanced out the window of the vehicle and saw the appellant strangling the woman. The appellant then "stomped" on the body, and to insure her death, drove the vehicle over the body, and then poured a flammable liquid on the body and set it afire. Specialist Gaunt and PFC Topping, horrified at what they had just witnessed, nevertheless assisted the appellant in secreting the body and in initially denying knowledge of the evening's events when questioned by the police.[1]

The murder came to the attention of the police when the appellant told another soldier, Corporal S, about the crime several days later. Corporal S reported the conversation to friends and to the police. By then SPC Gaunt and PFC Topping had deployed with their unit's advance party to Saudi Arabia.[2]

At the initial Article 39(a), UCMJ, session in the appellant's trial, the defense counsel moved to compel the production of seven witnesses who had deployed to Saudi Arabia. One of the seven prospective witnesses was to be used for presentencing purposes only, and the defense counsel agreed that a sworn statement from this witness was an adequate substitute for in-court testimony. At issue before this court are the military judge's rulings regarding the

---

1. By contrast, the appellant asserted that PFC Topping had actually killed the woman, and that he was the shocked bystander who helped secrete the body. The members rejected his version of the events.

2. They were returned to Fort Hood and eventually convicted of being accessories after the fact to the murder. Testifying under grants of immunity, they were the principal witnesses against the appellant.

remaining six requested witnesses. The defense requested all six to testify at trial for impeachment purposes only.

Two of the six requested witnesses were military policemen who escorted SPC Gaunt and PFC Topping back to Fort Hood from Saudi Arabia. The defense requested these two policemen in order to testify to the nervousness and concern displayed by SPC Gaunt and PFC Topping, in support of the defense theory that one of these two was the actual perpetrator of the murder. Neither the trial counsel nor defense counsel at Fort Hood (or defense counsel in Saudi Arabia acting on the latter's behalf) were able to contact or interview these two military policemen. However, both policemen, who returned to their unit in Saudi Arabia after escorting SPC Gaunt and PFC Topping back to Fort Hood, had executed sworn statements regarding their contacts with these two suspects.

The military judge, after reviewing the military policemen's sworn statements and hearing testimony concerning attempts to contact the witnesses, found that "no relevance has been shown; that if relevance exists, it's conditional relevance at best; and that these witnesses are unavailable" because of military necessity within the meaning of Article 49(d), UCMJ, 10 U.S.C. § 849(d). Finally, he elicited an admission from the defense counsel that these two prospective witnesses were not central to the defense's case and that the defense could "work with" the sworn statements. After denying the motion to produce the two military policemen, the military judge, nevertheless, emphasized that their testimony might become relevant and that he would be willing to reconsider his ruling once sufficient evidence was presented in the case to show relevance. Significantly, at no later time in this trial did the defense

counsel seek to reopen the motion to produce either or both of these witnesses.

Of the remaining four prospective witnesses, two were supposedly present at the time the appellant made damaging admissions to Corporal S, and two were supposedly privy to Corporal S's later recounting of the admissions. The defense counsel requested these four soldiers for possible impeachment of Corporal S. None of these four witnesses had been interviewed by the defense (or the government) and none had executed a written statement. Because of the prospective witnesses' remote location and the imminent hostilities in Southwest Asia, the defense counsel at trial was unable to describe with any specificity or certainty the contents of their prospective testimony. At no time in written pretrial motions, in litigation of the motion, or later during the trial did the defense counsel request the military judge's assistance in interviewing or securing statements from these prospective witnesses.

In denying the motion to produce the four prospective impeachment witnesses, the military judge ruled that the defense had made no showing that they had "testimony that was relevant or necessary to either the findings or the sentence in this case or any fact in issue that's within the meaning of Rule for Courts–Martial 703(b)(1) or (2)."

## II. The Requests for Witnesses

Before this court, the appellant now asserts that "the military judge erred in failing to abate the proceedings and for failing to order the government to assist the defense in gaining access to witnesses who had deployed to Saudi Arabia." [3]

■ The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his

**3.** Probably because the record is devoid of evidence that the defense counsel sought the assistance of the military judge in gaining access to the distant potential witnesses, both the appellate government and defense counsel seek to bolster their respective positions with affidavits containing new information about government and defense attempts to contact the requested witnesses. This information was available at

the time of trial but never presented. With some reservations concerning their admissibility before this court—*see, e.g., United States v. Bethea,* 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973)—we nevertheless accepted the affidavits as appellate exhibits. Our acceptance of the affidavits in this case is not intended to be precedent. We find that neither affidavit is particularly helpful to us in deciding this issue.

favor...." Article 46, UCMJ, 10 U.S.C. § 846, provides that the prosecution and defense shall have equal opportunity to obtain witnesses and provides for process to compel the production of witnesses to appear and testify. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 703(a) [hereinafter R.C.M.] mirrors the language of Article 46. However, the right to compel the attendance of witnesses has never been absolute. *United States v. Carpenter*, 1 M.J. 384 (C.M.A. 1976). Rule 703 guarantees the right to witnesses on the merits or on interlocutory questions provided that the testimony would be "relevant and necessary." R.C.M. 703(b)(1). Evidence is "relevant" if it has the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 401 [hereinafter Mil.R.Evid.]. Relevant evidence is "necessary" when it is not cumulative and when it would contribute to a party's presentation of a case in some positive way on a matter in issue. R.C.M. 703(b)(1) discussion; *United States v. Nix*, 36 M.J. 660 (N.M.C.M.R.1992).

■ The proponent bears the burden of establishing the relevance and the necessity of a requested witness' testimony by a preponderance of the evidence. R.C.M. 905(c). The standard for review we must utilize to determine whether the military judge committed error is abuse of discretion. *United States v. Moore*, 32 M.J. 56 (C.M.A.1991); *United States v. Roberts*, 10 M.J. 308 (C.M.A.1981); *United States v. Tangpuz*, 5 M.J. 426 (C.M.A.1978) (Cook, J.). Moreover, even if the military judge's ruling is in error, reversal is required only when there is a fair risk of prejudice to the appellant, based on the totality of the circumstances. *See United States v. Allen*, 31 M.J. 572, 612–13 (N.M.C.M.R.1990), *aff'd*, 33 M.J. 209 (C.M.A.1991); *Nix*, 36 M.J. 660 (N.M.C.M.R.1992); R.C.M. 905(c).

Special rules apply to *unavailable* witnesses. A party is not entitled to the presence of a witness who is "unavailable" as defined by Mil.R.Evid. 804(a). However, if a witness is determined to be unavailable, and that person's testimony:

is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such testimony, the military judge shall grant a continuance or other relief in order to attempt to secure the witness' presence, or shall abate the proceedings, unless the unavailability of the witness is the fault of or could have been prevented by the requesting party.

R.C.M. 703(b)(3). Military Rule of Evidence 804(a)(6) defines "unavailable" to include situations in which a witness is unable to appear because of "military necessity" (incorporating Article 49(d)(2), UCMJ). *See also United States v. Carpenter*, 1 M.J. 384 (C.M.A.1976) (a pre-evidence rules case).

■ In determining unavailability, the military judge must "weigh all the facts and circumstances of the case, keeping in mind the preference for live testimony." *United States v. Cokeley*, 22 M.J. 225, 229 (C.M.A.1986).

Factors to be considered include the importance of the testimony, the amount of delay necessary to obtain the in-court testimony, the trustworthiness of the alternative to live testimony, the nature and extent of earlier cross-examination, the prompt administration of justice, and any special circumstances militating for or against delay.

*Id.* at 229. The standard for review of a military judge's determination of unavailability is abuse of discretion. *United States v. Hampton*, 33 M.J. 21 (C.M.A.1991); *Cokeley*, 22 M.J. 225; *United States v. Crockett*, 21 M.J. 423 (C.M.A.1986), *cert. denied*, 479 U.S. 835, 107 S.Ct. 130, 93 L.Ed.2d 74 (1986).

In the case before us, the military judge made findings regarding unavailability for only two of the six requested witnesses, although all six were essentially in the same situation (*i.e.*, in a distant theater of operations with hostilities imminent). We will limit our review of the military judge's ruling of unavailability to the two military

police escorts and determine if the military judge abused his discretion in ruling that they were unavailable. Regarding the four remaining witnesses, we will determine whether the military judge abused his discretion: (1) in not ordering the government to assist the defense in contacting the witnesses; and, (2) in denying the defense motion to produce them for trial, under the standards of R.C.M. 905.

 We turn first to the rulings regarding the two military policemen who had escorted SPC Gaunt and PFC Topping from Saudi Arabia to Fort Hood. The military judge found their prospective impeachment testimony only "conditionally relevant," and therefore declined to order their production. Nonetheless, he indicated his willingness to revisit his ruling once testimony on the merits had further clarified the materiality and relevancy of their testimony. We find the judge's ruling to be a tentative ruling, and hold that failure of the defense counsel to renew the request, under the circumstances, constituted waiver. *United States v. Ciulla*, 32 M.J. 186 (C.M.A.1991). Assuming, *arguendo*, that the testimony of the policemen was relevant and assuming further that waiver does not apply, we agree with the military judge's ruling that the two policemen were unavailable within the meaning of Mil. R.Evid. 804(a). Normally, we would next test the military judge's determination whether an adequate substitute for the unavailable witness's testimony existed. Here, however, the defense counsel's concession that the testimony was not central to the defense case and that he could utilize the sworn statements of the military policemen defeats any attempts at relief from this court.

 As to the four witnesses who supposedly either overheard the appellant's admission to Corporal S or heard Corporal S's later recounting of that admission, we find no abuse of discretion by the military judge. Even though appellate defense counsel now assert that the military judge on his own initiative should have ordered the government to assist the defense counsel in interviewing the prospective witnesses, we note that the defense counsel never asked the military judge for such assistance and chose simply to rely on speculation as to the content of their testimony. Nor did the defense counsel ask that the proceedings be abated. Under these circumstances, we cannot now fault the military judge for failure to *sua sponte* order the government to assist the defense.[4]

Regarding the military judge's ruling denying these four witnesses, we agree with him that the defense did not meet its burden of showing materiality and necessity. We hold that the military judge did not abuse his discretion in denying the production of the four witnesses based on the information presented to him.

### III. Excusal of a Member After Court Assembly

 At about the midpoint in the presentation of the government's case, the military judge interrupted the testimony of a government witness when he noticed that a member of the court appeared to be asleep. After calling an Article 39(a), UCMJ, session outside the presence of the other members, the military judge questioned the member concerning his memory of the testimony just presented. Based on that questioning, the military judge, over the defense counsel's objection, excused the court member from further participation in the trial. The defense counsel's objection was based solely on the fact that an excusal would reduce the membership from seven to six, which counsel apparently believed was a less favorable number of members when the time came to vote on findings. No one disputed the military judge's finding that the member was asleep.

Appellate counsel assert that the military judge's action was an abuse of discretion

---

4. We note that in the affidavits presented to this court, the trial defense counsel did utilize the resources of the U.S. Army Trial Defense Service in attempting to contact witnesses in Saudi Arabia, to no avail. The very existence of this separate worldwide defense counsel organization in the Army, known to the military judge, militates against *sua sponte* action by him in ordering government assistance without a request to do so.

which prejudiced the appellant. We find no merit in this assertion.

Article 29(a), UCMJ, 10 U.S.C. § 829(a) states:

No member of a general or special court-martial may be absent or excused after the court has been assembled for the trial of the accused unless ... excused by the military judge for physical disability or other good cause....

Rule for Courts–Martial 505(c)(2)(A)(ii) reiterates this "good cause" standard. Moreover, subsection (f) of this rule defines good cause as:

For purposes of this rule, "good cause" includes physical disability, military exigency, and other extraordinary circumstances which render the member ... unable to proceed with the court-martial within a reasonable time. "Good cause" does not include temporary inconveniences which are incident to normal conditions of military life.

It is the duty of the military judge to guarantee that the trial is conducted fairly. *United States v. Graves*, 1 M.J. 50, 53 n. 17 (C.M.A.1975). The military judge has a responsibility to insure that court members are attentive. *United States v. West*, 27 M.J. 223 (C.M.A.1988). Indeed, the appellant would have been denied a fair trial if the military judge did *not* take corrective action in this situation. *United States v. Groce*, 3 M.J. 369 (C.M.A.1977).

We find that the record supports the military judge's findings of fact that the court member was sleeping. This finding was not disputed at trial and is not disputed before this court.

We find that the military judge's decision to take corrective action was proper. Moreover, his decision to excuse the member—rather than to rehabilitate the member by reading back portions of the testimony—was well within his discretion. Given the uncertainty of determining which portions of the testimony the member may have missed, we agree with his decision. *See United States v. Dayton*, 29 M.J. 6 n. 5 (C.M.A.1989) (wherein the Court of Military Appeals commended a military judge for similar action). We hold that the military

judge did not err in excusing the court member.

We have also considered the errors personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge WERNER and Judge JOHNSON concur.