UNITED STATES, Appellee

v.

Specialist Jeffrey A. RUTH, 376–94–8566,
United States Army, Appellant.

ARMY 9400093.

U.S. Army Court of Criminal Appeals.

25 July 1995.

For Appellant: Major Michael A. Egan,
JAGC, Captain Christopher W. Royer, JAGC
(on brief).

For Appellee: Colonel John M. Smith,
JAGC, Major Lyle D. Jentzer, JAGC, Captain Michael E. Mulligan, JAGC (on brief).

Before EDWARDS, GONZALES, and
RUSSELL, Appellate Military Judges.

OPINION OF THE COURT

GONZALES, Judge:

Contrary to his pleas, the appellant was
found guilty, by a general court-martial composed of officer and enlisted members, of
attempted larceny (thirty-seven specifications), conspiracy to commit larceny, violation
of a lawful general regulation, larceny (nine
specifications), forgery (thirty-two specifications), and obtaining services by false pretenses, in violation of Articles 80, 81, 92, 121,
123, and 134, Uniform Code of Military Jus-

tice, 10 U.S.C. §§ 880, 881, 892, 921, 923, and 934 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence consisting of a bad-conduct discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to Private E1.

Before this court the appellant asserts, inter alia, that the military judge erred by denying a defense request for an expert witness on handwriting analysis. More specifically, the appellant contends that the military judge failed to make a thorough preliminary inquiry into the validity of handwriting analysis, a technique also known as forensic document examination or questioned documents examination, under Military Rule of Evidence 702 [hereinafter Mil.R.Evid.] and *Daubert v. Merrell Dow Pharmaceuticals,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). He argues that the military judge failed to apply the validity factors of *Daubert* to determine whether the statements and opinions of Special Agent (SA) Richard A. Horton, the government's examiner of questioned documents, were admissible as expert scientific testimony. He also asserts that this inquiry should have included the testimony of Professor Mark P. Denbeaux, the defense-requested expert witness, who would have challenged the "scientific validity" of the handwriting analysis technique used by SA Horton to identify the author of the questioned signatures in this case. We disagree and affirm.

## I. BACKGROUND

The appellant and Private First Class (PFC) Joseph Durocher were the personnel action clerks for their field artillery battalion located in Bamberg, Germany. Using their access to personal information on soldiers in their battalion, the appellant and PFC Durocher developed a get-rich-quick scheme. They first opened a bank account in Liechtenstein in the fictitious name of "William Cooper," using a falsified copy of a passport. They then prepared and sent letters to the banks of over thirty soldiers within the battalion requesting a wire transfer of the complete balance in their accounts to the "William Cooper" account effective "one a.m.

Eastern Time Zone on 01 May 1992." The scheme was uncovered when several banks reported receiving fraudulent requests to transfer money after their customers denied having sent the requests.

## II. TESTIMONY BY EXPERTS

In *Daubert,* the Supreme Court ruled that the "general acceptance" standard, articulated in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), that an expert's opinion based on a scientific technique is inadmissible unless the technique is generally accepted as reliable in the relevant scientific community, had been superseded by Federal Rule of Evidence 702 [hereinafter Fed.R.Evid.]. *Daubert,* —— U.S. at ——, 113 S.Ct. at 2793. Federal Rule of Evidence 702 focuses on the admissibility of three categories of expert testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue." The three categories are "scientific, technical, or other specialized knowledge."

### a. Scientific Knowledge

We note that both *Frye* and *Daubert* dealt with "scientific knowledge." Justice Blackmun, writing for the majority, began his analysis in *Daubert* by noting that "[i]n the 70 years since its formulation in the *Frye* case, the 'general acceptance' test has been the dominant standard for determining the admissibility of novel *scientific evidence* at trial." *Daubert,* —— U.S. at ——, 113 S.Ct. at 2792 (emphasis added). He then construed Fed.R.Evid. 702 as replacing the *Frye* standard and requiring trial judges to make the following twofold inquiry when "faced with a proffer of expert *scientific testimony:* " (1) whether the expert is proposing to testify to "scientific knowledge" and (2) whether such testimony will assist the trier of fact. *Id.* at ——, 113 S.Ct. at 2796 (emphasis added). In determining whether the testimony is "scientific knowledge," Justice Blackmun made some "general observations" by providing several factors for the trial judge to consider during his inquiry. We

need not discuss these factors in order to decide this case.[1]

■ We need only note that nothing in Justice Blackmun's opinion indicates that it was intended to reach past the "scientific knowledge" part of Fed.R.Evid. 702 to include "technical" and "other specialized knowledge" as well. In fact, Chief Justice Rehnquist raised this question in his separate opinion when he asked, "Does all of this *dicta* [also] apply to an expert seeking to testify on the basis of 'technical or other specialized knowledge'—the other types of expert knowledge to which Rule 702 applies—or are the 'general observations' limited only to 'scientific knowledge'?" *Id.* at ——, 113 S.Ct. at 2800 (emphasis in original). His question was answered in the negative by Justice Blackmun: "Rule 702 also applies to 'technical, or other specialized knowledge.' Our discussion is limited to the scientific context because that is the nature of the expertise offered here." *Id.* at —— n. 8, 113 S.Ct. at 2795 n. 8. The Second Circuit has also clearly expressed its judicial view that *Daubert* is limited to the "scientific knowledge" prong of Fed.R.Evid. 702. *See Iacobelli Construction v. County of Monroe*, 32 F.3d 19, 25 (2d Cir.1994) and *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir.1993). We agree that *Daubert* was never intended to apply to any knowledge other than "scientific knowledge."

### b. Handwriting Analysis

■ The question for us to decide in this case is whether SA Horton's testimony on the handwriting analysis he conducted constitutes "scientific knowledge," or "technical, or other specialized knowledge" under Mil.R.Evid. 702. Handwriting analysis and the testimony of handwriting experts have been the subject of military appellate litigation for at least the past forty-four years since this court's predecessor decided *United States v. Pryor*, 2 C.M.R. 365, 1951 WL 2249 (A.B.R. 1951). The validity of the underlying theory of handwriting analysis—that each person's handwriting is unique—and the validity of

handwriting analysis—that it is capable of identifying that uniqueness—has been judicially accepted. *United States v. Lenart*, 21 C.M.R. 904, 910, 1956 WL 4695 (A.F.B.R. 1956). However, both of these cases were decided before Mil.R.Evid. 702 was promulgated in 1980 and before the Supreme Court decided *Daubert* in 1993. No military case has yet addressed our specific question. Since Mil.R.Evid. 702 is exactly the same as Fed.R.Evid. 702, we can look to the federal civilian courts for guidance.

The Federal District Court for the Southern District of New York recently undertook the task to determine whether forensic documents examination was "scientific knowledge" for purposes of Fed.R.Evid 702. Over the course of three days, that court heard extensive and detailed testimony from national experts in the field of forensic documents examination that we could never duplicate in our appellate courtroom. It concluded that, while scientific principles may relate to some aspects of handwriting analysis, questioned documents examination constitutes "technical, or other specialized knowledge." *United States v. Starzecpyzel*, 880 F.Supp. 1027, 1041 (S.D.N.Y.1995). Consequently, that court found that questioned documents examination evidence is not required to satisfy the validity factors recited in *Daubert* before it can be admitted into evidence under Fed.R.Evid. 702. *Id.* Based on our own reading of *Daubert* and the logic of the *Starzecpyzel* opinion, we agree that handwriting analysis evidence is best treated under Mil.R.Evid. 702 as "technical, or other specialized knowledge." Thus, we also agree that such evidence need not meet the validity factors of *Daubert* before it can be admitted into evidence under Mil.R.Evid. 702.

### c. Assisting the Trier of Fact

Within Mil.R.Evid. 702 itself, there are two requirements imposed on "technical, or other specialized knowledge" evidence. This rule allows for testimony in the form of an opinion from: (1) a witness qualified as an expert, which (2) will assist the trier of fact to under-

---

**1.** We first discussed the *Daubert* factors in the context of luminol testing, a scientific technique used to determine the presumptive positive presence of hidden blood by spraying the surface of clothing with a mixture of chemical agents, in *United States v. Hill*, 41 M.J. 596 (Army Ct.Crim. App.1994), *pet. denied*, 43 M.J. 154 (1995).

stand the evidence or determine a fact in issue. *United States v. Combs*, 39 M.J. 288, 291 (C.M.A.1994). Special Agent Horton's qualifications were not at issue at trial as the trial defense counsel did not object to his status as an expert in the field of questioned documents examination.

■ To determine whether the testimony will assist the trier of fact, the standard is helpfulness, not absolute necessity. *United States v. Meeks*, 35 M.J. 64, 68 (C.M.A.1992). It has been generally understood that expert testimony on handwriting comparison can assist panel members by focusing their attention on the minute similarities and dissimilarities between exemplars that panel members might otherwise miss when they perform their own visual comparisons. *See United States v. Buck*, 1987 WL 19300 (S.D.N.Y. Oct. 28, 1987). It is largely in the location of these similarities and dissimilarities that a professional documents examiner has an advantage over panel members. *Id.* In that advantage lies the expert's ability to assist the panel members. *Id.; see also United States v. Privett*, 4 C.M.R. 392, 1952 WL 2783 (A.B.R.1952); *United States v. Lutman*, 37 C.M.R. 892, 1967 WL 4344 (A.F.B.R.1967); *Lenart*, 21 C.M.R. at 910.

■ Federal Rule of Evidence 702 allows a trial court to admit the testimony of a "witness qualified as an expert by knowledge, skill, experience, training, or education" if his or her expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Tipton*, 964 F.2d 650, 653–654 (7th Cir.1992) (citing *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990)). Our superior court has held that the opinion of a handwriting expert supporting an identifying comparison of an accused's signature is clearly admissible as evidence in a court-martial. *See United States v. Alfred*, 10 M.J. 170, 171 (C.M.A. 1981); *United States v. Conley*, 4 M.J. 327, 329 (C.M.A.1978). While there is no legal requirement for the government to prove a forgery offense with a handwriting expert,

the use of an expert is usually a mark of solid legal practice in preparing to prosecute such a case. *United States v. Riddle*, 41 M.J. 673, 676 (A.F.Ct.Crim.App.1994). Special Agent Horton's testimony was clearly of a nature to assist the panel members in this case as they sought to determine the findings on thirty-five specifications of forgery. Accordingly, we find that the requirements for admissibility under Mil.R.Evid. 702 were satisfied.[2]

## III. DEFENSE–REQUESTED EXPERT WITNESS

With respect to the defense's request for Professor Denbeaux, the trial counsel argued that the defense had failed to show that he was a necessary witness under Rule for Courts–Martial 703(b)(1) [hereinafter R.C.M.]. After considering the defense counsel's offer of proof on Professor Denbeaux's expected testimony, the military judge ruled that its probative value did not warrant his production. Mil.R.Evid. 402 and 403.

■ Rule for Courts–Martial 703 guarantees the right to witnesses on the merits or on interlocutory questions provided that the testimony would be "relevant and necessary." *United States v. Boswell*, 36 M.J. 807, 810 (A.C.M.R.), *pet. denied*, 38 M.J. 223 (C.M.A. 1993). The proponent bears the burden of establishing the relevance and the necessity of a requested witness' testimony by a preponderance of the evidence. *Id.;* R.C.M. 905(c). The standard of review for the military judge's denial of the defense request for a witness is whether there has been an abuse of discretion. *United States v. Tangpuz*, 5 M.J. 426, 428 (C.M.A.1978); *United States v. Brown*, 28 M.J. 644, 646–647 (A.C.M.R.1989).

■ Professor Denbeaux, himself not an examiner of questioned documents, but a law professor at the Seton Hall University School of Law, collaborated with two other individuals to write a law review article contesting

---

**2.** Although our discussion focuses solely on Mil. R.Evid. 702, Rules 401, 402, 403, 703, and 704 also apply to the admissibility of expert testimony. *United States v. Combs*, 39 M.J. 288, 291 n. 1 (C.M.A.1994); *United States v. Houser*, 36 M.J. 392, 397 (C.M.A.), *cert. denied*, —— U.S. ——, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993).

the reliability of handwriting identification.[3] He had no direct knowledge of the appellant's case. The military judge confirmed that the defense counsel had Professor Denbeaux's law review article and suggested that he use the article to cross-examine SA Horton on Professor Denbeaux's hypothesis. He stated that handwriting analysis is not a complex technique for panel members to understand and that after cross-examination the panel members could give SA Horton's testimony whatever weight they deemed appropriate.[4] The defense counsel never cross-examined SA Horton with Professor Denbeaux's article or its hypothesis. We, therefore, find that the defense failed to demonstrate that Professor Denbeaux's testimony was "relevant and necessary." Accordingly, we hold that the military judge did not abuse his discretion in denying the defense's request for the production of Professor Denbeaux.

## IV. CONCLUSION

We have carefully considered the appellant's remaining assignment of error and those personally raised by him pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find that they are without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge EDWARDS and Judge RUSSELL concur.

---

**3.** Based on the description provided by the appellant's trial defense counsel, we believe the article referenced by counsel is *Exorcism of Ignorance as a Proxy for Rational Knowledge: The Lessons of Handwriting Identification "Expertise,"* by D. Michael Risinger, Mark P. Denbeaux & Michael J. Saks, found in 137 U.Pa.L.Rev. 731 (1989).

**4.** Handwriting analysis is not a highly complex field of study. *United States v. Thomas*, 41 M.J. 873, 875 n. 2 (N.M.Ct.Crim.App.1995).