**UNITED STATES**

v.

**Senior Airman David N. BARRETO,**
**United States Air Force.**

**ACM 33948.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 14 Oct. 1999.

Decided 21 June 2001.

Appellate Counsel for Appellant: Colonel James R. Wise, Major Stephen P. Kelly, Major Brandon A. Burnett, and Captain Bryan A. Bonner.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major Lance B. Sigmon.

Before SPISAK, STARR, and HEAD, Appellate Military Judges.

## OPINION OF THE COURT

HEAD, Judge:

The appellant pled guilty to and was convicted of, reckless operation of a passenger vehicle and negligent homicide, in violation of Articles 111 and 134, UCMJ, 10 U.S.C. §§ 911, 934. His guilty plea was conditioned on the preservation of his motion to abate the court-martial proceedings because of his amnesia. His approved sentence was a bad-conduct discharge, confinement for 7 months, forfeiture of $717 pay per month for 7 months, and reduction to E-2. The appellant has assigned two errors for our review. We affirm the findings and sentence.

## I. Background

On 31 July 1998, at approximately 1400 hours, the appellant departed Spangdahlem Air Base (AB), Germany in his 1987 BMW automobile for the base exchange (BX) located at Bitburg AB, Germany. When he departed Spangdahlem, he was accompanied by a local German national, Ms. Stephanie Dorfey.

As he left Spangdahlem, the appellant turned on to the B–50 highway, a mostly curving, two-lane road with a posted maximum speed of 100 kilometers per hour (km/h). As the appellant crested a hill, he began to pass at least four cars while travelling downhill on a left curve at a speed in excess of 100 km/h. Although the appellant could see a truck approaching him head on, he continued his passing maneuver. As the appellant passed the last car, he abruptly reentered the right lane, applied his brakes, and moved almost to the edge of the pavement in the right hand lane. In an attempt to remain on the pavement, he steered back to the left. At this point, the BMW began to fishtail and eventually skidded into the lane of oncoming traffic. While the appellant avoided striking the first oncoming truck, he collided with a second truck, an Air Force-owned Volkswagen (VW) Transporter pick-up truck. As a result of the accident, the passenger side of the BMW was destroyed and Ms. Dorfey was killed. The appellant suffered cuts, abrasions, a broken leg, and a closed head injury. After the accident, the appellant stated he could not remember the details of the accident.

Because of the appellant's inability to remember details of the accident, a sanity board was convened on 24 June 1999, to review his medical condition. The board concluded that the appellant suffered from retrograde and anterograde amnesia, which are typical for the type of head injury he sustained. The board made several findings pertinent to the appellant's mental status: (1) There was no evidence of malingering or

exaggeration of the symptoms; (2) Appellant had no memory of the accident because of the closed head injury; (3) There was very little likelihood he would be able to describe the events surrounding the accident; (4) The appellant did not have a severe mental disease or defect at the time of the accident; (5) He had an understanding of the legal process he was involved in; and (6) The appellant was a person of normal intelligence, with no psychiatric or neuropsychological disorder that would interfere with his competent participation in his defense.

## II. Appellant's Competency to Stand Trial

Appellant argues that the military judge erred when he denied a defense motion to abate the appellant's court-martial proceedings because of his amnesia. The appellant contends that his inability to recall the events immediately preceding the accident prevented him from cooperating intelligently in his defense.

■ Mental competence is a question of fact and appellate courts will overturn a military judge's determination only if it is clearly erroneous. *United States v. Proctor,* 37 M.J. 330, 336 (C.M.A.1993). A person is presumed competent to stand trial unless the defense establishes otherwise by a preponderance of the evidence. Rule for Courts Martial (R.C.M.) 909(e)(2). The standard is whether the accused is presently suffering from a disease or defect rendering that individual mentally incompetent to the extent the person is unable to understand the nature of the proceedings or to conduct or cooperate intelligently in defense of the case. R.C.M. 909(a) and its Discussion.

> The phrase … "understand the nature of the proceedings … or to conduct or cooperate intelligently in the defense of the case"—means that the accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and … a rational as well as factual understanding of the proceedings against him."

*Proctor,* 37 M.J. at 336 (quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

■ An inability to remember the events surrounding the crime itself does not make one incompetent to stand trial. *United States v. Lee,* 22 M.J. 767, 769 (A.F.C.M.R. 1986). Even though the accused may have no memory of the offense, he can still analyze the probabilities of having committed the offense in light of his own knowledge of his character and propensities. *United States v. Olvera,* 15 C.M.R. 134, 142, 1954 WL 2265 (C.M.A.1954). However, an accused must be able to function. This is "essential to the fairness and accuracy of a criminal proceeding." *Pouncey v. United States,* 349 F.2d 699, 701 (1965). In deciding whether an accused can function the following factors should be evaluated:

1. The extent to which the amnesia affected the defendant's ability to consult and assist his lawyer;

2. The extent to which the amnesia affected the defendant's ability to testify on his own behalf;

3. The extent to which the evidence could be extrinsically reconstructed in view of the defendant's amnesia. Such evidence would include evidence relating to the crime itself as well as any possible alibi;

4. The extent to which the Government assisted the defendant and his counsel in the reconstruction;

5. The strength of the prosecution's case. Does it negate all reasonable hypotheses of innocence?

6. Any other facts and circumstances which would indicate whether or not the defendant had a fair trial.

*Wilson v. United States,* 391 F.2d 460 (U.S.App.D.C.1968).

■ The military judge was able to converse intelligently with the appellant during the guilty plea inquiry and noted that the appellant had no difficulty in understanding the nature of the proceedings or the legal concepts involved in the appellant's trial (Factor 1). Further, the appellant was of average intelligence with no psychiatric or neuropsychological disorder that would interfere with his intelligent participation in his defense (Factor 1). Additionally, the military judge noted that during the appellant's

testimony on his request for reconsideration of his abatement motion, the appellant was poised, clearly understood the questions put to him by counsel, and provided clear and credible responses to those questions (Factor 2).

The prosecution extrinsically reconstructed the accident through the use of witness testimony, including the findings of two accident reconstruction experts, physical evidence gathered at the accident site, including an inspection of the appellant's car, and a computerized simulation reconstructing the accident itself (Factor 3). The prosecution went to great lengths to assist the defense in the reconstruction of the accident. In addition to their documentary evidence, the prosecution provided the defense with an independent defense investigator and accident reconstruction expert to assess the evidence in preparation for trial (Factor 4). All of the evidence supported the conclusion that the cause of the accident was the appellant's negligent operation of his motor vehicle and negated any other reasonable hypothesis (Factor 5).

Having applied the *Wilson* factors and, after careful consideration of the appellant's arguments, we find that the military judge's findings of fact and his conclusion that the appellant was competent to stand trial are well supported by the record and were not clearly erroneous.

### III. Production of Witnesses

Appellant argues that the military judge erred when he failed to abate the proceedings until such time as the prosecution produced two possible witnesses to the accident: the driver of the first truck who was approaching the appellant in the oncoming lane, and the driver of the vehicle immediately behind the appellant. Appellant contends the failure to produce these witnesses prevented him from presenting any reasonable defense.

■ We review a military judge's denial for the production of a witness for an abuse of discretion. *United States v. Rockwood,* 52 M.J. 98, 104 (1999). R.C.M. 703(b) entitles each party to production of any witness whose testimony on a matter in issue would be relevant and necessary. However, if a witness is unavailable and his testimony is essential for a fair trial, the proceedings will be continued or abated unless there is an adequate substitute for the testimony. R.C.M. 703(b)(3). It is incumbent on the defense to submit to the trial counsel a written list of witnesses they request. R.C.M. 703(c)(2). Finally, the obligation to locate witnesses favorable to the accused rests with the defense. *United States v. Seek,* 13 M.J. 946, 947 (A.F.C.M.R.1982).

■ In his findings of fact, the military judge found that the two requested witnesses were unavailable, that the appellant had failed to properly request the witnesses in accordance with R.C.M. 703(c), and that the prosecution acted in good faith in trying to locate the witnesses by placing advertisements in the local newspapers seeking witnesses. Finally, the military judge found that the prosecution produced an adequate substitute for the potential testimony of these 2 witnesses in the form of sworn statements taken from 14 eyewitnesses to the accident and the reconstruction of the accident by the prosecution's expert witness.

We concur with the military judge's findings of fact and rule that he did not abuse his discretion when he denied the defense motion for abatement. The prosecution made a diligent effort to locate all witnesses to the accident through use of the newspaper advertisements. The prosecution also provided the defense with not only their own accident reconstruction expert but an independent investigator as well. Thus, the defense was afforded sufficient resources to pursue the identities and testimony of the two requested witnesses. Finally, we note that the defense was merely speculating as to what the witnesses would say. Based on the results of the expert accident reconstruction, it is quite likely their testimony would be entirely consistent with the observations of the other eyewitnesses in this case.

### IV. Conclusion

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.