IN THE CASE OF


UNITED STATES, Appellee

v.

David N. BARRETO, Senior Airman
U.S. Air Force, Appellant

No. 01-0819

Crim. App. No. 33948

United States Court of Appeals for the Armed Forces

Argued February 26, 2002

Decided August 2, 2002


EFFRON, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE and BAKER, JJ., and SULLIVAN, S.J.,
joined.


Counsel


For Appellant:  Major Marc A. Jones (argued); Lieutenant Colonel Beverly B.
    Knott, Lieutenant Colonel Timothy W. Murphy, and Captain Patrick J. Dolan
    (on brief).


For Appellee:  Captain Christa S. Cothrel (argued); Colonel Anthony P.
    Dattilo and Lieutenant Colonel Lance B. Sigmon (on brief).


Military Judge:  Rodger A. Drew, Jr.


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted appellant, in accordance with his pleas, of one specification of reckless driving and one specification of negligent homicide, in violation of Articles 111 and 134, Uniform Code of Military Justice, 10 USC §§ 911 and 934.  He was sentenced to a bad-conduct discharge, confinement for seven months, forfeiture of $717 pay per month for seven months, and reduction to E-2.  The convening authority approved the sentence.  The Court of Criminal Appeals affirmed.  55 MJ 568 (2001).

On appellant's petition, we granted review of the following issues:

> I. WHETHER THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE'S MOTION FOR ABATEMENT OF APPELLANT'S COURT-MARTIAL PROCEEDINGS UNTIL SUCH TIME AS APPELLANT WAS ABLE TO ADEQUATELY ASSIST IN HIS DEFENSE.
>
> II. WHETHER THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE'S MOTION FOR ABATEMENT OF APPELLANT'S COURT-MARTIAL PROCEEDINGS UNTIL SUCH TIME AS THE GOVERNMENT WAS ABLE TO SECURE THE PRESENCE OF ESSENTIAL WITNESSES.

For the reasons set forth below, we affirm.

## Background

Appellant was involved in an automobile collision on Bundesstrasse 50 ("B-50"), a winding two-lane highway in Germany, between Spangdahlem and Bitburg Air Bases. In support of his guilty pleas, appellant entered into a stipulation with the prosecution that established the following facts. The posted speed limit was 100 kilometers per hour (kph) (approximately 62 miles per hour). Due to congestion, traffic in appellant's direction was moving at 70 kph (approximately 43 miles per hour). Appellant was observed driving a 1987 BMW 325i in excess of the posted speed limit. Appellant, while driving in the left lane, passed three or four cars, then abruptly reentered the right lane to avoid approaching cars.

Moments later, after moving beyond the line of approaching cars, appellant again pulled into the left lane to begin a second passing maneuver. The parties further stipulated:

> In the second passing maneuver, the accused
> crested a hill. . . . From the crest of
> this hill, an observer has the ability to
> see whether there is any oncoming traffic
> for seven or eight hundred meters. . . .
> After cresting the hill, the accused passed
> at least four cars while traveling downhill
> on a left curve at a speed in excess of 100
> kph. As the accused was passing, passengers
> in the vehicles he passed have stated that
> they believed that he would not be able to
> return to the right lane without hitting the
> oncoming truck.

Witnesses further reported that appellant again reentered the right lane abruptly, then braked to avoid going off the right edge of the road as he rounded the curve. As appellant engaged the brakes and steered left, he overcorrected and lost control of his car. The car fishtailed, oscillating laterally to the right and left, and spun into the path of the oncoming traffic. Appellant missed the first two oncoming vehicles but struck two others, a military-owned pickup truck and a civilian truck.

Appellant's passenger, Stephanie Dorfey, a German national, suffered massive head trauma and died at the scene. The driver of the military pickup (a captain) and her passenger (a 15-year-old military dependent) were seriously injured. Each was hospitalized for three days. Appellant suffered a variety of injuries, including a closed head injury, which required a five-day hospital stay. As a result of the head trauma, appellant has not been able to remember the accident or the events immediately preceding it. Appellant has been diagnosed with retrograde and anterograde amnesia.[1] His only memory of the

---

[1] At defense request, a sanity board was convened to evaluate appellant's competence to stand trial. The board concluded that appellant was not malingering and suffered from retrograde and anterograde amnesia, a condition "very consistent with the type of [head] injury he received." The board further concluded that "there is no evidence that supports SrA Barreto having any mental disease or defect either before or at the time of the motor vehicle accident," other than appellant's inability to recall the accident.

incident involves leaving Spangdahlem Air Base en route to the Bitburg Exchange, and then waking up in the hospital.

* * *

Prior to entering his guilty pleas, appellant moved to abate the proceedings on account of his amnesia, contending his condition prevented him from competently assisting in his defense because he could not "communicate to his attorneys the events surrounding the . . . accident" or "accurately or reliably testify" to these facts. Appellant also sought to abate the proceedings on grounds that the prosecution failed to produce two witnesses -- the driver of the oncoming truck in the left lane and the last driver appellant passed in his lane of travel -- whose testimony the defense claimed was "essential to a fair trial, and there [wa]s no adequate substitute."

The prosecution's evidence in response to the defense motions included the findings of two accident reconstruction experts, physical evidence from the crash site, a computer simulation reconstructing the accident, and 14 eyewitness accounts that included 5 sworn statements. The prosecution also indicated that the convening authority provided appellant with his own accident reconstruction expert and a part-time investigator to assist the defense in analyzing the Government's evidence. The parties further stipulated that appellant

attended a "Local Conditions" briefing conducted by the Wing Safety Office one month prior to the accident as a precondition to obtaining a military driver's license. The briefing noted that B-50 was Germany's most dangerous highway and most problems were due to excessive speed and improper passing.

The Government's evidence established that appellant's BMW had no defects which might have caused or otherwise contributed to the accident, and the accident was the result of driver error. Prosecution experts concluded that appellant's second passing maneuver was unsafe because "the passing occurred on a curve, at a high rate of speed, and in the face of oncoming traffic." In addition, the experts concluded that appellant lost control of his vehicle from overcorrecting his steering after reentering his lane of travel. The parties entered into a pretrial agreement whereby appellant conditionally pled guilty, preserving the right to appeal the two issues now before us. See RCM 910(a)(2), Manual for Courts-Martial, United States (2000 ed.).[2]

## ISSUE I

As previously noted, the defense at trial moved to abate the proceedings on grounds that appellant was incompetent to

---

[2] All Manual provisions cited are identical to the ones in effect at the time of appellant's court-martial.

stand trial by reason of his amnesia.  The defense takes a

similar position in the present appeal, contending that

appellant's memory loss "indicate[s] an inability to cooperate

rationally in [his] defense" because appellant could not tell

his counsel what happened or testify on his own behalf as to

what occurred.  Final Brief at 9.  The defense further contends

that as a matter of due process, a person who has no memory of

the alleged crime cannot be convicted unless the prosecution's

evidence "negates all reasonable hypotheses of innocence."  Id.

at 10, citing Wilson v. United States, 391 F.2d 460 (D.C. Cir.

1968).  The defense suggests that there is a "reasonable"

hypothesis of innocence -- the "possib[ility] that . . . his

passenger [Ms. Dorfey] engaged in some negligent act – such as

grabbing at the wheel or otherwise distracting" appellant, and

that her conduct was the proximate cause of the accident.  Id.

at 11.

## Discussion

The question of whether an accused is mentally competent to

stand trial is one of fact, and "we will overturn the military

judge's determination on appeal only if it is clearly

erroneous."  United States v. Proctor, 37 MJ 330, 336 (CMA

1993); see also RCM 909(e), Manual, supra.  The governing

provision, RCM 909, provides in relevant part:

7

(a) <u>In general</u>. No person may be brought to trial by court-martial if that person is presently suffering from a mental disease or defect rendering him or her mentally incompetent <u>to the extent that he or she is unable to understand the nature of the proceedings against them or to conduct or cooperate intelligently in the defense of the case</u>.

(b) <u>Presumption of capacity</u>.  A person is presumed to have the capacity to stand trial unless the contrary is established.

* * *

(e) <u>Incompetence determination hearing</u>.

(1) <u>Nature of issue</u>.  The mental capacity of the accused is an interlocutory question of fact.

(2) <u>Standard</u>.  Trial may proceed unless it is established by a preponderance of the evidence that the accused is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings or to conduct or cooperate intelligently in the defense of the case.  In making this determination, the military judge is not bound by the rules of evidence except with respect to privileges.

(3) If the military judge finds the accused is incompetent to stand trial, the judge shall report this finding to the general court-martial convening authority, who shall commit the accused to the custody of the Attorney General.

(Emphasis added.)

8

Under the rule, an accused must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and . . . a rational as well as factual understanding of the proceedings against him" in order to stand trial. Proctor, 37 MJ at 336 (quoting Dusky v. United States, 362 U.S. 402 (1960)). An accused's inability to remember the details of an offense does not, without more, compel a finding of incompetence. United States v. Olvera, 4 USCMA 134, 15 CMR 134 (1954). With respect to amnesia, we have noted:

> Concededly, such an accused is at some disadvantage -- for, if innocent, he does not demonstrate that quality by testimony that he . . . does not remember. However, he is still quite competent to assume the witness stand, and to assure the court that he does not remember -- and he is certainly able to analyze rationally the probabilities of his having committed the offense in light of his own knowledge of his character and propensities.

Id. at 142, 15 CMR at 142.

As in Olvera, appellant's amnesia did not preclude him from intelligently cooperating in his defense or taking the stand on his own behalf. RCM 909(a). He does not contend that his amnesic condition impaired his ability to rationally examine and assess the strength of the Government's evidence against him. As noted in the military judge's findings of fact, appellant exhibited "poise[], clearly understood the questions put to him

9

by his counsel, and provided clear and credible responses" when he testified during the hearing to consider the abatement motion. Moreover, the defense was provided with its own accident reconstruction expert and an independent investigator to assist in preparing a defense and evaluating the Government's evidence. The prosecution also provided the defense with unlimited access to the Government's experts, and all its evidentiary files.

The military judge also noted that, although appellant had no memory of the accident itself, he was not precluded from "providing his defense counsel with his knowledge of his character, propensities, driving habits, and previous experiences with his vehicle and the roadway involved in the incident," and identifying character witnesses to corroborate or otherwise testify to these matters on his behalf. See Olvera, supra.

Under these circumstances, appellant's decision to plead guilty reflected a rational decision made in light of the prosecution's overwhelming evidence of his guilt. This included 14 eyewitnesses -- witnesses who were available to the defense for interview and cross-examination -- the testimony of two accident reconstruction experts, physical and documentary evidence collected at the crash site, and a computer simulation

reconstructing the accident.  This evidence provided ample

grounds to prove that appellant was driving recklessly along B-

50 prior to the accident, with specific knowledge that B-50 was

a dangerous roadway,[3] and that his BMW spun out of control after

he attempted to pass four or five cars along a curve at an

unsafe speed in the face of oncoming traffic.

     In affirming the military judge's ruling, the Court of

Criminal Appeals relied on the test set out in Wilson, supra.[4]

In Wilson, the court identified six factors to be considered

when assessing the capacity of an amnesic defendant to stand

trial, three of which are pertinent to the present case:

> (3) The extent to which the evidence in suit
> could be extrinsically reconstructed in view
> of the defendant's amnesia. Such evidence
> would include evidence relating to the crime
> itself as well as any reasonably possible
> alibi.
>
> (4) The extent to which the Government
> assisted the defendant and his counsel in
> that reconstruction.
>
> (5) The strength of the prosecution's case.
> Most important here will be whether the

---

[3] Appellant's amnesia did not prevent him from remembering the fact that he had attended the "Local Conditions" briefing on B-50 just weeks before the accident and had personal knowledge that it was a dangerous highway.  His memory loss was only limited to the facts of the accident.  See n.1, supra.

[4] We need not decide whether, as a general matter, the test in Wilson should be applied in all memory loss cases.  In the present case, the application of the Wilson factors by the Court of Criminal Appeals satisfied the standards we have applied in prior cases and more than adequately protected appellant's substantial rights.

> Government's case is such as to negate all
> reasonable hypotheses of innocence.  If
> there is any substantial possibility that
> the accused could, but for his amnesia,
> establish an alibi or other defense, it
> should be presumed that he would have been
> able to do so.[5]

391 F.2d at 463 (footnote omitted).

Regarding the third factor, the court below concluded that this requirement was more than met by the Government's submitting into evidence the findings of its two accident reconstruction experts, physical evidence taken from the accident site, and a computer simulation reconstructing the accident.  55 MJ at 571.  The court further observed that the Government "went to great lengths to assist the defense" by providing the defense team its own independent investigator and accident reconstruction expert, satisfying the fourth factor. Id.

---

[5] The other factors identified by the Wilson court are:

> (1) The extent to which the amnesia affected the
> defendant's ability to consult with and assist his
> lawyer.

> (2) The extent to which the amnesia affected the
> defendant's ability to testify in his own behalf.

> *   *   *

> (6) Any other facts and circumstances which would
> indicate whether or not the defendant had a fair
> trial.

We agree with the Court of Criminal Appeals that this evidence "negated any other reasonable hypothesis" of appellant's innocence (fifth factor). Id. Appellant's passenger interference theory -- that Ms. Dorfey may have done something to interfere with his driving when he abruptly reentered the right lane -- is speculative at best. The record is devoid of evidence that would justify concluding that this theory constituted a "reasonable" hypothesis of innocence. Moreover, the defense did not otherwise present sufficient evidence to demonstrate a "substantial possibility" that appellant could have established a defense even with a full memory. We also note that while the fact of appellant's amnesia did not warrant the abatement of his trial, he was free to present evidence of his memory loss and his theory of passenger interference to the court-martial.[6]

## ISSUE II

At trial, defense counsel also moved to compel production of two witnesses -- the driver of the lead truck approaching in the left lane and the driver of the last vehicle appellant

---

391 F.2d at 463-64 (footnote omitted).

[6] We have noted elsewhere that if it were shown that an accused's amnesic condition was temporary, judicial discretion may warrant the grant of a "reasonable continuance[] to effectuate the recovery of memory." United States v. Olvera, 4 USCMA 134, 142, 15 CMR 134, 142 (1954). However, the sanity board concluded, and appellant concedes, that it is likely he will never recover his memory of the accident.

passed in the right lane -- or, in the alternative, to abate the proceedings.  Neither the defense nor the prosecution had knowledge of the names or contact information for these witnesses.  The defense first requested production of the unknown witnesses on May 3, 1999, in a memorandum to the Article 32[7] investigating officer pursuant to RCM 405(g), Manual, supra, approximately eight months after the accident.  In an attempt to locate the witnesses, the Government placed ads in German and U.S. newspapers in the summer of 1999. Although four eyewitnesses responded, there was no response from the two drivers requested by the defense.

Defense counsel argued that testimony from the unknown witnesses was essential to a fair trial because they were the only persons with unobstructed views of the accident.  In response, the Government noted that 3 of its 14 eyewitnesses stated that they had unobstructed views of appellant's second passing maneuver and of the accident itself.

The military judge denied the defense motion and noted:

> [T]he prosecution has done all that it is
> required to do in the way of investigating
> its case, as well as disclosing the
> information that it has available to the
> defense . . . .  It is impressive that the
> number of witnesses that the prosecution has
> been able to locate, even given the amount

---

[7] Uniform Code of Military Justice, 10 USC § 832.

> of time after the events occurred, when the
> Government began its media campaign, if you
> will, to try to alert the members of the
> U.S. and German communities as to the need
> for them to come forward.  A number of such
> people did, in fact, come forward[.]

The military judge further found that the prosecution's evidence was more than sufficient to substitute for the unknown witnesses.  The defense did not allege bad faith and agreed that the "prosecutors have acted in good faith and done everything they could, [but] they didn't start until too late."

## Discussion

We have held that "[a] trial may proceed in the absence of a relevant and necessary witness if that witness is not amenable to process."  United States v. Davis, 29 MJ 357, 359 (CMA 1990) (citing Mil. R. Evid. 804(a) and RCM 703(b)(3), Manual, supra).  The issue as to whether the prosecution has satisfied its duty to produce under RCM 703 "'is a question of reasonableness.'  The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness."  Id. (quoting Ohio v. Roberts, 448 U.S. 56, 74 (1980)).  Once the unavailability of a witness is established, RCM 703(b)(3) provides:

> Unavailable witness.  Notwithstanding
> subsections (b)(1) and (2) of this rule, a
> party is not entitled to the presence of a

15

> witness who is unavailable within the
> meaning of Mil. R. Evid. 804(a).  However,
> if the testimony of a witness who is
> unavailable is of such central importance to
> an issue that it is essential to a fair
> trial, and if there is no adequate
> substitute for such testimony, the military
> judge shall grant a continuance or other
> relief in order to attempt to secure the
> witness' presence or shall abate the
> proceedings, unless the unavailability of
> the witness is the fault of or could have
> been prevented by the requesting party.

We note, as an initial matter, that the Government had very little with which to work as it attempted to locate the unknown witnesses.  Defense counsel did not provide the prosecution with names, contact data, or any other identifying information that could be used to locate and produce them, as the Manual requires.  See RCM 703(c)(2)(B)(i).  Appellant does not contend that the Government failed to undertake reasonable efforts or exert due diligence in this endeavor, and does not allege bad faith by the prosecutors or investigators.  We also note that defense counsel did not suggest to the court other means that the Government could have been ordered to employ, in addition to running newspaper ads, to locate the two drivers.

We reject appellant's contention that the missing witnesses were "critical and vital" to his defense and necessary for a fair trial.  It is not clear whether the driver of the lead truck in the left lane even witnessed the accident, and the

record indicates that the driver of the lead truck did not stop. Appellant hit the third vehicle, and the driver of the second car -- a surgeon who stopped to render aid -- stated that he witnessed the collision from his rearview mirror.  Further, the Government's proffer of three witnesses with unobstructed views of appellant as he drove along B-50 and the accident, in addition to its other eyewitness and expert evidence, constituted an adequate substitute for the testimony of the unknown witnesses.

## Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed.