# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SIMS, COOK and GALLAGHER
Appellate Military Judges

**UNITED STATES, Appellant**
**v.**
**Specialist KEVIN J. KITMANYEN**
**United States Army, Appellee**

ARMY 20110609

Headquarters, 7th Army Joint Multinational Training Command
Jeffery Nance and Christopher T. Fredrikson, Military Judges
Lieutenant Colonel Francisco A. Vila, Staff Judge Advocate

For Appellant:  Colonel Michael E. Mulligan, JA; Major Amber J. Williams, JA; Captain Chad M. Fisher, JA (on brief); Major Amber J. Williams, JA; Captain Chad M. Fisher, JA (reply brief).

For Appellee:  Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene Jamison, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA; Captain Barbara A. Snow-Martone, JA (on brief).

31 October 2011

---------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON
APPEAL BY THE UNITED STATES
FILED PURSUANT TO ARTICLE 62,
UNIFORM CODE OF MILITARY JUSTICE
---------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

COOK, Judge:

Appellee is charged with one specification of rape of a child, one specification of aggravated sexual contact with a child, and one specification of sodomy of a child under the age of 12, in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925 [hereinafter UCMJ].  This case is before this court pursuant to a government appeal of a military judge's ruling in accordance with Article 62, UCMJ, 10 U.S.C. 662.

At trial, the military judge made a finding that Mr. Douglas Loveland is available to testify at trial.  Subsequently, the military judge ruled that if Mr.

Loveland does not appear to testify for the defense, then Criminal Investigation Command (CID) Special Agent G. [hereinafter SA G] would be prohibited from testifying and appellee's sworn written statement would be excluded as evidence. Appellant claims the military judge abused his discretion in so ruling. Appellant requests that this court vacate the military judge's ruling and order the military judge to find Mr. Loveland unavailable.

We agree with appellant that the military judge abused his discretion in finding Mr. Loveland available to testify at trial and subsequently barring SA G from testifying and excluding appellee's sworn written statement from being entered as evidence. We will take appropriate action in our decretal paragraph.

### FACTS

Appellate Exhibit [hereinafter AE] LVIII, the military judge's thirteen-page "Essential Findings of Fact, Conclusions of Law, and Ruling – Defense Motion to Produce Witness or Abate the Proceedings," is attached as Appendix A. Appendix B, AE LVI, is the military judge's eight-page "Summary of RCM 802 Conferences (8 March – 9 June 2011)." Because the key question at issue is whether the prosecution has satisfied its burden to "exhaus[t] every reasonable means to secure" Mr. Loveland's "live testimony," *United States v. Burns*, 27 M.J. 92, 97 (C.M.A. 1988), we will focus on the facts that have an impact on this analysis.

The defense requested witness at issue, Mr. Loveland, is an employee of the U.S. Food and Drug Administration (FDA) and lives and works in the United States. Mr. Loveland had previously supervised SA G when SA G was employed by the FDA prior to his service with CID. SA G interviewed appellee and took appellee's sworn written statement. The prosecution has sought to enter this written statement into evidence. Mr. Loveland, during his deposition, testified that, among other things, SA G is an untruthful person. (Appendix A at 4; AE XXXVIII at attachment 4).

Mr. Loveland was initially identified as a potential witness when derogatory information was discovered in a file containing information about SA G's FDA employment. In response to an attempt by appellee's civilian defense counsel to interview Mr. Loveland, Mr. Jim Smith, an associate chief counsel at the FDA, responded via email,

> . . . pursuant to 5 USC 301, our regulations, and agency policy, FDA employees (and past employees) may not divulge information acquired during the discharge of their duties without the permission of the Commissioner of FDA. Also pursuant to our regulations and policies, the agency does not make its employees available for

> interviews by litigants in proceedings, civil or criminal,
> which are unrelated to the Food, Drug, and Cosmetic Act,
> the Public Health Services Act and related statutes.

(Appendix A at 2; Appendix B at 3).

During a Rule for Courts-Martial [hereinafter R.C.M.] 802 conference, members of the prosecution informed the military judge that "the FDA would not allow its employees to be interviewed by either the Government or the Defense" and "that even if a valid subpoena compelled Mr. Loveland to 'appear' at a deposition or a court-martial, he still needed FDA authorization to actually 'testify.'" (Appendix A at 2-3; Appendix B at 3).

On 1 April 2011, Major Tulud, Chief of Military Justice, 7th U.S. Army Joint Multinational Training Command (JMTC), pursuant to a "suggestion" by the military judge, called Mr. Smith and "requested information on the process of obtaining FDA approval for allowing Mr. Court, the civilian defense counsel, to interview Mr. Loveland" and "also discussed Mr. Loveland's possible testimony at a court-martial in Germany." (Appendix A at 3).

While informing MAJ Tulud that his research concerning the Manual for Courts-Martial led him to the conclusion that "Mr. Loveland could not be compelled to testify in an overseas court-martial," Mr. Smith explained the process of requesting FDA approval for Mr. Loveland's testimony at a court-martial in Germany. *Id*. Mr. Smith also informed MAJ Tulud "that, since FDA special agents were 'simply too busy, they [FDA] cannot allow their agents to come over on an invitational basis.'" *Id*. Mr. Smith followed up this conversation with an email to the prosecution that stated the FDA was likely to disapprove a request for Mr. Loveland to testify at a court-martial in Germany and discussed the admissibility of a deposition. (*Id*.; Appendix B at 4).

On 4 April 2011, at the request of Mr. Court, the prosecution sent a memorandum to BG Salazar, Commanding General, 7th JMTC, and the convening authority in this case, that requested an order to depose Mr. Loveland. (Appendix A at 3; AE XXXVIII at attachment 1). On 5 April 2011, BG Salazar approved the request to depose Mr. Loveland (AE XXXVIII at attachment 3) and ordered CPT Gleich to depose Mr. Loveland. (Appendix A at 3; AE XXXVIII at attachment 2).

On 5 April 2011, the trial counsel, CPT Ongjoco, signed a subpoena requiring Mr. Loveland to appear on 12 April 2011 at FDA headquarters in order to be deposed. (Appendix A at 4; AE LVII at attachment 1). In accordance with FDA procedures, CPT Ongjoco attached this subpoena to a cover memorandum addressed to Ms. DiPaolo, Office of Enforcement, Food and Drug Administration, Department of Health and Human Services, and emailed both to Mr. Smith on 5 April 2011. *Id*.

On 7 April 2011, Mr. Smith emailed CPT Ongjoco an authorization letter from Ms. Andrea Chamblee (Appendix A at 4; AE LVII at attachment 2). In this letter, Ms. Chamblee identified herself "[a]s the Acting Director of the Division of Compliance Policy," and as such has "been delegated authority by the [FDA] Commissioner to review requests made under 21 C.F.R. § 20.1." (Appendix A at 4; AE LVII at attachment 2). In granting the prosecution's request to depose Mr. Loveland, Ms. Chamblee explained her analysis of how 21 C.F.R. § 20.1 impacted her decision:

> Section 20.1 provides that a request for testimony may be granted upon a determination that the testimony is both in the public health interest and furthers the objectives of the Federal Food, Drug, and Cosmetic Act (FDCA) and the agency. Because of limited resources and the vast number of requests the agency receives for personnel to testify in litigation to which FDA is not a party, FDA may, in its discretion, disapprove a request for testimony even when these prerequisites have been met. FDA must deny requests that are duplicative, unlikely to elicit relevant testimony, unduly burdensome, or otherwise inappropriate. Accordingly, the agency must carefully assess requests for testimony made pursuant to section 20.1. As discussed below, after considering the merits of your requests, FDA has determined that your request to depose Mr. Loveland . . . is in the public interest and promotes the objectives of the FDCA and the agency, and hereby authorizes Mr. Loveland to provide certain testimony.
>
> In this particular case, compelling circumstances appear to justify an exception to the general policy of disapproving requests for testimony. Therefore, pursuant to 21 C.F.R. § 20.1, I am authorizing Mr. Loveland . . . to provide testimony in this case . . . .

*Id*.

On 12 April 2011, a deposition of Mr. Loveland was conducted via video teleconference [hereinafter VTC]. (Appendix A at 4; AE XXXVIII at attachment 4). Mr. Loveland and Mr. Smith were in a conference room in Silver Spring, Maryland. The deposition officer and all parties, including the appellee, were in a conference room in Grafenwoehr, Germany. (Appendix A at 4; AE XXXVIII at attachment 4). Mr. Loveland testified he was SA G's direct supervisor at the FDA's Washington Field Office for fourteen months in 2006 and 2007. The gist of Mr. Loveland's testimony was that SA G is an untruthful person. (Appendix A at 4; AE XXXVIII at

attachment 4). Mr. Loveland also stated, in response to a question from Mr. Court, that he had no personal objection to traveling to Germany to testify at appellee's court-martial, but that the ultimate decision maker was going to be the FDA. (AE XXXVIII at attachment 4).

On 13 April 2011, Mr. Court requested the prosecution produce Mr. Loveland for trial. (Appendix A at 4; AE XXXVII at attachment 1). The prosecution conceded that Mr. Loveland was both relevant and necessary under R.C.M. 703(b)(1) and did not contest their obligation to produce Mr. Loveland. (Appendix A at 4).

On 13 April 2011, CPT Ongjoco forwarded a subpoena for Mr. Loveland to appear at Rose Barracks, Germany on 26 April 2011, to testify at a court-martial concerning "information relating to [SA G]," (Appendix A at 5; AE XXXVIII at attachment 6), and a cover letter addressed to Ms. DiPaolo, Office of Enforcement, Food and Drug Administration, Department of Health and Human Services (Appendix A at 5 and AE XXXVIII at attachment 5) via email to Mr. Smith. In the letter, CPT Ongjoco stated "the Government will incur all costs associated with this travel." *Id.*

On 14 April 2011, Mr. Smith forwarded to CPT Ongjoco, via email, a denial letter signed by Ms. Chamblee. (Appendix A at 5; AE XXXVIII at attachment 7). Explaining why she had denied the request for Mr. Loveland to testify at the instant court-martial, Ms. Chamblee stated:

> While the agency was compelled by law to grant permission for Mr. Loveland to respond to the deposition subpoena issued by the Court Martial and testify under oath at the deposition, Mr. Loveland is not compelled to respond to the trial subpoena, since the Court Martial is in Germany. See Rules of Courts Martial (R.C.M.), Rule 703(e)(2) . . . .
> Moreover, if a civilian witness is otherwise unavailable to testify at trial (including not being amenable to a trial subpoena), deposition testimony is admissible at the Court Martial.

(AE XXXVIII at attachment 7).

Ms. Chamblee continued her denial letter by restating the evaluation factors contained in 21 C.F.R § 20.1, ultimately finding the prosecution's request: was not in the public health interest; did not promote the objectives of the Federal Food, Drug and Cosmetic Act; and did not advance the mission of the FDA. *Id.* Ms. Chamblee also stated that authorizing Mr. Loveland "to leave his duties at FDA to come to Germany to testify at trial" while not meeting any of the three criteria,

5

would be "redundant and unnecessary" based on the admissibility of Mr. Loveland's deposition at court-martial. (Appendix A at 5; AE XXXVIII at attachment 7).

Following receipt of the denial, CPT Ongjoco called Mr. Smith and "discussed the possibility that the" chief of justice, deputy staff judge advocate or the staff judge advocate might call him. Mr. Smith's response was that the decision of the Commissioner's designee, Ms. Chamblee, was final and that the analysis of whether to allow Mr. Loveland to travel to Germany to testify was the same regardless of who from the Department of the Army made the request. (Appendix A at 5).

On 18 April 2011, the military judge held an Article 39(a) hearing to address the Defense Motion to Produce or Abate (Appendix A at 5; AE XXXVII). During this hearing, MAJ Tulud testified concerning prosecution efforts to produce Mr. Loveland at court-martial. The prosecution again conceded that Mr. Loveland was relevant and necessary and the prosecution was obligated to produce him. (Appendix A at 5). After the hearing, the military judge conducted an R.C.M. 802 conference wherein he "told the trial counsel that they had not taken reasonable efforts to produce Mr. Loveland as a witness." (Appendix A at 5). The trial counsel, arguing unsuccessfully that Mr. Loveland was unavailable, requested and received a continuance to make additional efforts to secure the attendance of Mr. Loveland. (Appendix A at 5). At this time, the military judge told the trial counsel "that someone much higher ranking than MAJ Tulud should contact the FDA to request Mr. Loveland's attendance." (Appendix A at 5).

Based on both parties agreeing a court order requiring the production of Mr. Loveland may facilitate the process, the military judge issued an Order to Produce Mr. Loveland on 18 April 2011. (Appendix A at 5; AE XLIX).

BG Salazar signed a letter on 2 May 2011 that was addressed to the FDA Commissioner. (AE XXXIX at Encl 4). In his letter, BG Salazar made a request on behalf of the "Government Prosecution" to authorize Mr. Loveland to appear in person in Germany and give testimony in appellee's court-martial. In the letter, BG Salazar discussed the allegations before the court-martial and emphasized the appellee was facing a maximum punishment of a life sentence without the possibility of parole. In support of the request, BG Salazar stated the military judge had ordered the "Government Prosecution" to produce Mr. Loveland for trial and included a copy of the military judge's order as an enclosure to his letter. BG Salazar concluded his letter by stating: Mr. Loveland would not be requested to testify concerning information the FDA is prohibited from disclosing by law; Mr. Loveland's testimony would promote the objectives of 21 C.F.R. § 20.1 and the FDA; Mr. Loveland's testimony was in the public interest and was relevant and necessary for appellee to receive a fair trial; and the U.S. Army would incur all costs associated with Mr. Loveland's travel to Germany. *Id.*

6

The military judge made a finding that this letter was sent via email to Mr. Smith. (Appendix A at 6). On 17 May 2011, in response to BG Salazar's letter, Mr. Smith emailed CPT Ongjoco a denial letter signed by Ms. Chamblee. (Appendix A at 6; AE XXXIX at Encl. 5). The letter is similar to the denial letter Ms. Chamblee sent to the prosecution in April 2011.

In response to suggestions made by the military judge, the assistant trial counsel (ATC), CPT Steele, asked Mr. Smith via email whether Mr. Loveland would be allowed to testify: (1) "if he would only have to fly to Germany over a weekend to testify; (2) if there was a change of venue to the United States; or (3) if he only had to testify via VTC." Mr. Smith responded by saying that regarding weekend testimony or VTC testimony, his legal analysis would not change and Mr. Loveland would not be made available. While Mr. Smith stated the Commissioner would instruct Mr. Loveland to comply with a lawful, enforceable order to appear at a stateside court-martial, Mr. Smith did not discuss whether Mr. Loveland would actually be authorized to testify. (Appendix A at 6; AE XXXIX at Encl. 6).

On 7 June 2011, the military judge ruled the prosecution had failed to establish the unavailability of Mr. Loveland. CPT Steele subsequently emailed Mr. Smith informing him of the military judge's ruling. CPT Steele asked Mr. Smith whether the FDA would authorize the testimony of Mr. Loveland if he was subpoenaed to testify in Maryland. Mr. Smith responded that "authorization would likely be granted pursuant to our . . . regulations . . . ." (Appendix A at 6; AE XLII at Encl 2).

On 9 June 2011, the prosecution emailed Ms. DiPaolo a letter requesting authorization for Mr. Loveland to testify pursuant to a subpoena at Fort Meade, Maryland, on Monday, 20 June 2011. (Appendix A at 7; AE XLIV). Ms. DiPaolo emailed the ATC, "We are going to authorize the testimony of Mr. Loveland for June 20, 2011. I will send the formal authorization via email and certified mail next week." (Appendix A at 7; AE XLIII). The prosecution subsequently decided not to pursue moving the court-martial to Maryland and the military judge, while agreeing to reconsider his earlier decision, on 10 June 2011, upheld his 7 June 2011 ruling.[1]

## LAW AND DISCUSSION

### A. *Jurisdiction*

Article 62, UCMJ, states, *inter alia:*

---

[1] We note that the military judge found that a "change of venue would cause unjustifiable expense and delay." (Appendix A at 12). This finding is consistent with the holding in *United States v. Crockett*, 21 M.J. 423, 430 (C.M.A. 1986).

7

> (a)(1) In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal the following (other than an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification):
> (A) An order or ruling of the military judge which terminates the proceedings with respect to a charge or specification.
> (B) An order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding.

At this point in the trial, the military judge has not terminated the proceedings. He has ruled, however, that if the prosecution fails to comply with his order to produce Mr. Loveland, then the prosecution cannot call SA G and cannot offer the appellee's sworn written statement into evidence. (Appendix A at 13). This ruling has therefore directly impacted the admissibility of evidence. While appellee's counsel challenges the jurisdiction of this court based on the provisional nature of the military judge's exclusion of evidence, the military judge's explicit ruling on the availability of Mr. Loveland directly results in the exclusion of SA G's testimony and of appellee's statement. This ruling does in fact act to constitute the exclusion of "evidence that is substantial proof of a fact material in the proceeding." Article 62(a)(1)(B), UCMJ.

Both our sister court and superior court have rejected a narrow application and adopted a broader approach in deciding when a military judge's rulings have the effect of excluding evidence.[2] "The majority in *True* rejected a narrow construction of the statute, noting [p]rudent advice concerning the use of [Article 62] should not be confused with an unjustified narrowing of the scope of this statute or deliberate frustration of the will of Congress." *United States v. Wuterich*, 67 M.J. 63, 74 (C.A.A.F. 2008). The key is whether the military judge's ruling "directly limit[s] the pool of potential evidence that would be admissible at the court-martial," not whether the military judge has actually formally excluded evidence. *Wuterich* at 75. While "[f]ederal court decisions interpreting 18 U.S.C. § 3731 constitute guidance, not binding precedent, in the interpretation of Article 62, UCMJ," *Wuterich* at 71, federal courts have consistently applied a similar standard. *See United States v. Parks*, 100 F.3d 1300 (7th Cir. 1996); *United States v. Cannone*, 528 F.2d 296 (2d Cir. 1976); *United States v. Watson*, 386 F.3d 304 (1st Cir. 2004).

---

[2] *United States v. Wuterich*, 67 M.J. 63, 74 (C.A.A.F. 2008)(citing *United States v. Watson*, 386 F.3d 304, 313 (1st Cir. 2004)); *United States v. True*, 28 M.J. 1, 4 (C.M.A. 1989); *United States v. Taylor*, 60 M.J. 720, 725 (N-M Ct. Crim App. 2004).

As captured above and discussed below, the prosecution has taken reasonable, good faith efforts to produce Mr. Loveland at trial. Additional efforts by the prosecution to produce Mr. Loveland at appellee's pending trial in Germany would undoubtedly be futile. Because the prosecution will not be able to produce Mr. Loveland at trial, the military judge's conditional ruling has the impact of excluding evidence that is substantial proof of a fact material to the proceeding. This court therefore has jurisdiction.

### B. Standards of Review

When acting on interlocutory appeals pursuant to Article 62, UCMJ, our court may act "only with respect to matters of law" and we may not substitute our own fact-finding. *United States v. Cossio,* 64 M.J. 254, 256 (C.A.A.F. 2007).

We review the facts under a clearly erroneous standard and conclusions of law de novo. *United States v. Cohen*, 63 M.J. 45, 49 (C.A.A.F. 2006) (citing *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000); *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)).

We review a military judge's determination of witness availability for an abuse of discretion. *United States v. Boswell*, 36 M.J. 807, 810 (A.C.M.R. 1993) (citations omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

### C. Applicable Law

The witness in question, Mr. Loveland, is a defense requested witness. An accused is entitled to the production of any witness whose testimony on a matter in issue on the merits would be relevant and necessary. R.C.M. 703(b)(1). An accused's right to secure the presence of witnesses at trial is not absolute.[3] An accused is not entitled to the presence of a witness who is unavailable within the meaning of M.R.E. 804(a). R.C.M. 703 (b)(3).

A witness is considered to be unavailable if the witness is unable to be produced by process or other reasonable means, or is unavailable within the meaning of Article 49(d)(2), UCMJ. M.R.E. 804(a). Under Article 49(d)(2), UCMJ, a witness is unavailable if, ". . . by reason of death, age, sickness, bodily infirmity,

---

[3] *United States v. Bennett,* 12 M.J. 463, 466 (C.M.A. 1982); *United States v. Sweeney*, 14 U.S.C.M.A. 599, 603, 34 C.M.R. 379, 383 (C.M.A. 1964).

imprisonment, military necessity, *nonamenability to process*, or other reasonable cause, is unable or refuses to appear and testify in person at the place of trial or hearing . . . ." (emphasis added).

The key issue of whether the prosecution has satisfied its duty to produce a witness is one of reasonableness. *Ohio v. Roberts*, 448 U.S. 56, 74 (1980); *United States v. Barreto*, 57 M.J. 127, 132-33 (C.A.A.F. 2002)(citing United *States v. Davis*, 29 M.J. 357, 359 (C.M.A. 1990)).  "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to . . . present that witness."  *Crockett* at 430 (quoting *Roberts* at 74-75).  While the prosecution has the burden to "exhaus[t] every reasonable means to secure" a witness's "live testimony" *United States v. Burns*, 27 M.J. 92, 97 (C.M.A. 1988), "[t]he law does not require the doing of a futile act."  *Crockett* at 430 (quoting *Roberts* at 74-75).[4]

Because the witness in question, Mr. Loveland, is a civilian, "the key to obtaining the presence of a civilian witness at a court-martial is service of a subpoena and tender of a witness fee and mileage."  *Burns* at 97.  However, a "subpoena may not be used to compel a civilian witness to travel outside the United States."  See Discussion R.C.M. 703(e)(2).

### C. *De Novo Review and Conclusions of Law*

As noted above, we find the prosecution, in good faith, took all reasonable measures to produce Mr. Loveland at court-martial.  These measures included the issuance of a subpoena for Mr. Loveland to testify at court-martial and the offer to pay all costs associated with Mr. Loveland's travel.  (AE XXXVIII at attachments 5 and 6).  In addition, the convening authority personally addressed a request to the Commissioner of the FDA asking that Mr. Loveland be permitted to travel to Germany to testify in appellee's court-martial.  The convening authority's request not only contained a detailed explanation of why Mr. Loveland was required at the court-martial and an offer to pay for all related expenses associated with Mr. Loveland's testifying in Germany, but included as an enclosure the military judge's order to produce Mr. Loveland at trial.  In addition, members of the prosecution contacted an FDA representative to discuss whether allowing Mr. Loveland to testify on a weekend would impact FDA's analysis.  The FDA representative responded that

---

[4] While the courts in *Roberts, Page, Crockett, Barreto,* and *Burns* dealt with an accused's Sixth Amendment Confrontation Clause right and the present case involves an accused's Sixth Amendment Compulsory Process right, we find the burden on the prosecution in producing a defense witness to exhaust all reasonable measures, in good faith, to be substantially similar. See 2 Gilligan & Lederer, Court-Martial Procedure §20-33.11 (3rd ed. 2006).

the timing of court-martial was immaterial. (Appendix A at 6; AE XXXIX at Encl. 6).

While "nonamenability to a subpoena does not necessarily establish unavailability as a witness," *Crockett* at 427 (citing *Mancusi v. Stubbs*, 408 U.S. 204 (1972) and *Barber*), the enforceability of a subpoena does play a critical role in our analysis of prosecutorial efforts to produce Mr. Loveland at trial and played a critical role in the FDA's analysis concerning making Mr. Loveland available. In the face of what she perceived to be an enforceable subpoena, the FDA designee, Ms. Chamblee, using her governing regulations as contained in the CFR, approved Mr. Loveland being deposed. In contrast, when presented with what she correctly perceived to be an unenforceable subpoena, Ms. Chamblee, using her governing regulations, disapproved the prosecution's request to produce Mr. Loveland at a court-martial in Germany. When presented, prospectively, with a subpoena for Mr. Loveland to appear in a court-martial located in Maryland, Ms. DiPaolo, an FDA representative, stated the FDA would comply with this enforceable subpoena.

In short, the FDA approved requests to make Mr. Loveland available when Mr. Loveland was issued an enforceable subpoena, while disapproving requests for Mr. Loveland to appear at court-martial when Mr. Loveland was not faced with an enforceable subpoena. In regards to the enforceability of the subpoena, it is of no significance who from the Department of the Army or Department of Defense (DoD) made the request to FDA or how persuasively the request was made. Based on the law, a subpoena "issued in court-martial cases to compel witnesses to appear and testify … shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue and shall run to any part of the United States, or the Commonwealths and possessions." Article 46, UCMJ. As a result, and as captured by the R.C.M., a "subpoena may not be used to compel a civilian to travel outside the United States and its territories."[5]

However, the R.C.M. also states, "[c]ivilian employees of the Department of Defense may be directed by appropriate authorities to appear as witnesses in courts-martial as an incident of their employment. Appropriate travel orders may be issued for this purpose."[6] While not enforceable as a matter of law, the R.C.M. therefore envisions the ability of DoD employers to make participating in courts-martial part of a civilian DoD employee's official duties, with likely adverse administrative consequences for non-compliance.

The FDA, however, is not a DoD entity. It falls under another executive agency, the Department of Health and Human Services (HHS). Neither the UCMJ

---

[5] *See* Discussion in R.C.M 703(e)(2).

[6] *Id*.

nor any R.C.M. identify the ability of the DoD to make appearances at court-martial an incident of HHS employees' employment.

FDA actions in regards to handling requests for Mr. Loveland to participate in the instant court-martial have been consistent with 5 U.S.C.A. §301, 21 CFR §20.1 (the implementing regulation), and case law. Section 301 of Title 5 U.S.C.A. gives each "head of an Executive department or military department" the authority to "prescribe regulations for the government of his department." However, this "section does not authorize withholding information from the public or limiting the availability of records to the public." Pursuant to court rulings, these agency regulations cannot be inconsistent with law[7] and 5 U.S.C.A. §301 does not authorize agency heads to "withhold documents or testimony from federal courts."[8]

The FDA has not forbidden the release of evidence or testimony. To the contrary, the FDA has authorized Mr. Loveland to testify concerning his official duties and his opinion of SA G's character for truthfulness based on his official relationship with SA G. This evidence has been recorded pursuant to the deposition of Mr. Loveland and is available to the appellee to introduce prospectively as evidence at his court-martial. What the FDA has not approved is, in the face of an unenforceable subpoena, Mr. Loveland traveling to Germany to testify at appellee's court-martial.

Despite the above-listed measures taken by the prosecution and the inability of the prosecution to make Mr. Loveland appear at a court-martial in Germany, either through legal or administrative coercion, the military judge identified a non-exhaustive list of measures the prosecution should have pursued in attempting to make Mr. Loveland available at trial. Because the prosecution had not pursued these measures, the military judge found the prosecution had "failed to demonstrate it has exhausted every reasonable means to secure Mr. Loveland's live testimony" and declared Mr. Loveland available for trial.

The measures the military judge listed included: finding the prosecution's advocacy to the FDA inadequate, to include failing to stress to the FDA designee the ability of Mr. Loveland to testify over a weekend to minimize the impact on Mr. Loveland's official FDA duties; finding the prosecution had failed to ensure the FDA Commissioner had personally received and acted on their request(s); and finding the prosecution was derelict in not engaging senior members of the Army or DoD in the request process. By finding the prosecution has in good faith exhausted all reasonable measures to make Mr. Loveland available, we have necessarily found

---

[7] *United States ex rel. Touhy v. Ragen et al.*, 340 U.S. 462, 463, fn. 2 (1951).

[8] *Exxon Shipping Co. v. United States Department of Interior*, 34 F.3d at 778 (9th Cir. 1994).

the military judge's suggested measures to not be reasonable and ultimately find his application of legal principles to the facts to be clearly unreasonable.

From the record, it is clear the prosecution made repeated requests to the FDA in order to secure Mr. Loveland's presence at court-martial in Germany using both formal and informal means. In their requests, the prosecution articulated the severity of the case and the importance of Mr. Loveland's testimony. In these requests, the prosecution discussed the possibility the military judge would exclude Mr. Loveland's deposition and whether having Mr. Loveland testifying over a weekend would impact FDA's analysis. These factors were discounted by the FDA. It was not reasonable for the military judge to presume redundant advocacy by the prosecution would have impacted FDA's decision.

While acknowledging Ms. Chamblee was the FDA Commissioner's designee for responding to the prosecution's request for Mr. Loveland to appear as a witness and noting Ms. Chamblee twice denied requests for Mr. Loveland to travel to Germany to testify at court-martial, the military judge erroneously found the prosecution should have taken their request to the FDA Commissioner herself.[9] Because the properly identified designee rejected the prosecution's request based on the relevant facts and FDA's regulation for reviewing witness requests, the prosecution was not required to appeal this ruling to the FDA Commissioner.

As an employee of the FDA, Mr. Loveland was subject to regulations pursuant to 21 CFR §20.1 regarding his participation as a witness in a judicial proceeding. As noted above, these regulations afforded the FDA Commissioner, or her designee, consistent with the law, the ability to authorize or not authorize requests for employees to testify. The properly designated FDA representative, pursuant to her interpretation of 21 C.F.R. §20.1 and acting within her discretionary authority, declined to authorize each of the requests for Mr. Loveland to travel to Germany.[10]

Lastly, the military judge found the prosecution had failed to pursue the measure of going higher in its chain of command in making its requests to the FDA.

---

[9] The military judge also discounted the fact BG Salazar had addressed his request to the FDA Commissioner because there was "no evidence that this letter was delivered to, or discussed with, anyone in the FDA other than Ms. Chamblee." (Appendix A at 6).

[10] While the military judge discussed why the prosecution had not challenged this regulation or its application under the Administrative Procedures Act, 5 USC §500 *et. seq.*, the military judge did not specifically list this as a reasonable measure the prosecution should have pursued in its attempt to make Mr. Loveland available for court-martial. Nonetheless, we do not find this to be a reasonable measure the prosecution had to pursue.

13

While acknowledging that BG Salazar, the general court-martial convening authority, had personally signed a request and addressed it to the FDA Commissioner, the military judge discounted this measure stating, "General Salazar didn't make it happen, so obviously you should go higher." While not articulating in his findings how far up the chain of command the prosecution should have gone in making its witness request, the military judge repeatedly insinuated the prosecution may have to elevate this witness request to the Secretary of Defense or the President of the United States.[11]

There is no legal requirement that the prosecution have enlisted the assistance of someone of a particular rank. The FDA had made it clear that the status of the requestor was immaterial. Their actions reflected such, as they approved the request, made by a captain, for Mr. Loveland to be deposed and also approved the request, made by a captain, for Mr. Loveland to prospectively testify in Maryland.

---

[11] In questioning MAJ Tulud in regards to her discussion with Mr. Smith, the military judge asked MAJ Tulud, "And did you discuss – and just to clarify, but you didn't discuss other possibilities of getting permission from the FDA? . . . . If the President of the United States called you up and asked you to produce this witness, would you? Did you ever say something like that?" MAJ Tulud responded in the negative.

In response to the prosecution discussing an FDA statement that the rank of the requestor was immaterial to the FDA's analysis (Appendix B at 5), the military judge stated:

> MJ: If it was the President of the United States, would the requester be material?
> ATC: Sir, I can't answer that.
> MJ: Yes, you can Captain Steele. If the President of the United States was the requestor, would the requestor be material? CPT Steele?
> ATC: Sir ----
> MJ: Are you saying that the President of the United States cannot tell the FDA to pony up a witness?
> ATC: Under the regulations, if you follow the regulations ---
> MJ: You're going to lose a lot of credibility on this one, Captain Steele.

(R. at 381-382)

In discussing whether the prosecution was going to pursue an appeal of the FDA denial through the Administrative Procedures Act, the military judge stated, "Well, I believe that Mr. Gates, Mr. Robert Gates [then Secretary of Defense], probably has more authority that I do and more authority than Mr. Court does. And, by the way, you work for him…. You also work for the President." (R. at 366)

What the FDA found to be persuasive was the enforceability of the subpoena, not the rank of the requestor.

Federal courts that have reviewed issues of availability of witnesses have looked at what role the prosecution played in the unavailability of the witness. When the prosecution has facilitated the unavailability of a witness, courts have chosen not to find the witness unavailable.[12] In those instances, however, where the prosecution was not responsible for the unavailability of a witness, such as is currently before us, courts have not imputed the actions of other government entities to the prosecution and have found the witness unavailable.[13]

The prosecution has not taken any measures that could be construed as facilitating the unavailability of Mr. Loveland to testify at appellee's court-martial in Germany. In fact, there is no evidence whatsoever that Mr. Loveland has ever been in Germany or that his absence or nonamenability to process was in any way facilitated or caused by the prosecution.

The military judge has also characterized the prosecution's inability to produce Mr. Loveland at trial as a "continuing part of the government's discovery violation." He has used this finding to further support his prohibition of SA G from testifying at court-martial and his suppression of appellee's sworn written statement. (Appendix A at 12). The military judge also stated the "Government can erase any resulting prejudice to its case" caused by the military judge suppressing testimony by SA G and introduction of appellee's sworn statement, "by complying with my order to produce Mr. Loveland." *Id.* This court finds the prosecution's inability to produce Mr. Loveland does not constitute a discovery violation under R.C.M. 701(g)(3). We further find the military judge abused his discretion in characterizing this inability to produce Mr. Loveland as a discovery violation and in using this perceived violation as grounds to bar SA G from testifying and the introduction of appellee's sworn statement.

The military judge abused his discretion in finding Mr. Loveland available to testify at trial because he "committed a clear error of judgment in the conclusion [he] reached upon weighing of the relevant factors." *See Ellis*, 68 M.J. at 344. Contrary to the military judge's conclusions, we hold the prosecution, in taking good faith efforts to secure Mr. Loveland's attendance to testify at trial, has exhausted every reasonable means to secure Mr. Loveland's live testimony. "The fact that the

---

[12] *United States v. Yida*, 498 F.3d 945 (9th Cir. 2007); *United States v. Mann*, 590 F.2d 361 (1st Cir. 1978).

[13] *United States v. Olafson*, 213 F.3d 435 (9th Cir. 2000); *United States v. Eufracio-Torres*, 890 F.2d 266 (10th Cir. 1989); *United States v. Winn*, 767 F.2d 527 (9th Cir. 1985); *United States v. Seijo*, 595 F.2d 116 (2nd Cir. 1979).

15

means utilized were unsuccessful does not mean that the government's efforts were not made in good faith." *Eufracio-Torres* at 270. We therefore find that Mr. Loveland is unavailable to testify at appellee's court-martial in Germany.

## CONCLUSION

The appeal of the United States pursuant to Article 62, UCMJ, is granted. The ruling of the military judge is vacated and the record will be returned to the military judge for action not inconsistent with this opinion

Senior Judge SIMS and Judge GALLAGHER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court